[No. 24655–1–I.   Division One.   April 15, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. FLOYD
A. BARROW, *Appellant*.

*Deborah A. Whipple* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Susan Storey, Deputy,* for respondent.

COLEMAN, J.—Floyd Barrow appeals a judgment and sentence for two violations of the Uniform Controlled Substances Act. He contends that prosecutorial misconduct deprived him of a fair trial.

Barrow was arrested in the vicinity of Second and Pike in downtown Seattle for selling $20 worth of a cocaine–like substance. An undercover police officer, Donna J. O'Neal, had made the purchase and then radioed the seller's description to other officers in the vicinity. Based on Officer O'Neal's description, Officer Victor Maes apprehended Barrow. During a search incident to arrest, Officer Maes found a narcotics pipe in Barrow's pocket, but no controlled substances. Barrow had less than $1 in his possession.

Subsequent laboratory analysis revealed that the substance sold to Officer O'Neal was not cocaine, but that Barrow's pipe contained cocaine residue.[1] Barrow was charged with violating the "burn statute", RCW 69.50.401(c),[2] and with unlawful possession of a controlled substance in violation of RCW 69.50.401(d). The unlawful possession charge was based on the cocaine residue in the pipe.

The matter went to trial before a jury, where Barrow testified in his own behalf and denied having knowingly

---

[1]The residue contained less than .1 gram of cocaine.

[2]RCW 69.50.401(c) makes it a crime "to offer, arrange, or negotiate for the sale, gift [or] delivery . . . of a controlled substance to any person and then sell, give [or] deliver . . . to that person any other liquid, substance, or material in lieu of such controlled substance."

possessed cocaine. Barrow explained that he had surreptitiously taken the pipe from his brother in hopes of using it to get high with somebody, and that he therefore had not known the pipe contained cocaine residue.

Barrow also denied having sold Officer O'Neal the purported cocaine and asserted that this was a case of mistaken identity. To bolster this defense, Barrow's lawyer sought during closing argument to undermine Officer O'Neal's identification testimony: he emphasized Officer O'Neal's inexperience[3] and her probable frustration on the night of Barrow's arrest.[4] He also emphasized the State's failure to provide any corroborative physical evidence of Barrow's guilt.

The jury found Barrow guilty as charged. This appeal followed.

## I

Barrow first contends that his conviction on the possession charge should be overturned because the State improperly shifted the burden of proof onto him. During closing, the prosecutor questioned whether the jury believed Barrow's testimony that he had taken the pipe from his brother, and then repeatedly asked "Where is his brother" who could testify in Barrow's behalf. Barrow contends that the "Where is his brother" questions shifted onto him the burden of proof as to his lack of knowledge defense. *See generally State v. Traweek*, 43 Wn. App. 99, 106–08, 715 P.2d 1148, *review denied*, 106 Wn.2d 1007 (1986).

This court recently clarified when it is permissible for a prosecutor to inquire into a defendant's failure to present evidence. In *State v. Contreras*, 57 Wn. App. 471,

---

[3]Officer O'Neal had been on the police force 9 months at the time of Barrow's arrest.

[4]Before the purchase from Barrow, Officer O'Neal had made two attempts to purchase cocaine. These attempts failed when other officers in the area happened by and were recognized by the sellers.

788 P.2d 1114, *review denied,* 115 Wn.2d 1014 (1990), we considered a closing argument similar to the one at issue here in that the prosecutor asked "where is" the witness who could corroborate defendant's exculpatory testimony. *Contreras,* at 476. The *Contreras* court found no impropriety in the argument and held:

> When a defendant advances a theory exculpating him, the theory is not immunized from attack. On the contrary, the evidence supporting a defendant's theory of the case is subject to the same searching examination as the State's evidence. The prosecutor may comment on the defendant's failure to call a witness so long as it is clear the defendant was able to produce the witness and the defendant's testimony unequivocally implies the uncalled witness's ability to corroborate his theory of the case.

*Contreras,* at 476. In other words, a prosecutor can question a defendant's failure to provide corroborative evidence if the defendant testified about an exculpatory theory that could have been corroborated by an available witness.

Other Washington cases are in accord with the *Contreras* decision allowing, *in limited situations,* prosecutorial comment on a defendant's failure to present evidence. *Compare State v. Bebb,* 44 Wn. App. 803, 815, 723 P.2d 512 (1986) ("[a] prosecutor can comment on the accused's failure to present evidence on a particular issue if persons other than the accused or his spouse could have testified for him on that issue"), *aff'd on other grounds,* 108 Wn.2d 515, 740 P.2d 829 (1987) *with State v. Cleveland,* 58 Wn. App. 634, 647-49, 794 P.2d 546 (error for prosecutor to generally imply that defendant had a duty to present any favorable evidence in existence), *review denied,* 115 Wn.2d 1029 (1990). Federal and other state courts also are generally in accord. *See United States v. Baker,* 855 F.2d 1353, 1362 (8th Cir. 1988) (prosecutor's comment that nothing in record supported defendant's testimony was a permissible comment on the witness's testimony), *cert. denied,* 490 U.S. 1069 (1989); *State v. Sinclair,* __ Conn. App. __, 569 A.2d 551, 555 (1990) (prosecutor entitled to comment on defendant's failure to support his own factual theories); *State v.*

*Howard,* 320 N.C. 718, 360 S.E.2d 790, 796 (1987) (permissible for prosecutor to comment on defendant's failure to produce exculpatory or corroborative evidence); *Commonwealth v. Yarris,* 519 Pa. 571, 549 A.2d 513, 526 (1988) (no impropriety in challenging defendant's failure to produce a witness who would have corroborated his testimony), *cert. denied,* 491 U.S. 910 (1989).

Here, Barrow personally testified about an exculpatory theory that could have been corroborated by his brother. Nothing in the record indicates that his brother could not be produced to testify. Accordingly, pursuant to *Contreras,* we reject this assignment of error.

## II

Barrow next asserts that the prosecutor's closing argument introduced facts not in evidence and that this deprived him of a fair trial. The argument at issue is the prosecutor's explanation, made during closing argument, of why Barrow had no money or cocaine on him when he was arrested:

> You heard the officers testify they've been doing these buy busts for close to two years. Certainly the word is out on the street and people know that there are undercover buyers on the street, and the first [thing] they want to do is to get rid of the money. What do they do? They spend it. So it's left in a store and then if they have change, fine, they have change. Oftentimes they pass it off to someone else. The fact that this defendant didn't have any money is very consistent with this defendant having dealt the cocaine in this case. *The same reason that the defendant didn't have any additional bindles on his person or any additional packets of cocaine. It's a criminal deal, and anybody knows that if you don't want to get caught, you don't carry more than you absolutely have to. So you carry one, you get rid of one.*

(Italics ours.) Barrow objected to the italicized part of this argument; his objection was overruled on the ground that "[t]his is argument." On appeal, Barrow points out that the State offered no trial evidence that drug dealers carry limited supplies of controlled substances.

We reject Barrow's contention because it mischaracterizes the prosecutor's argument. The prosecutor did not

purport to quote from evidence that was not admitted. Rather, she simply made an argument based on common sense. Such argument does not fall within the prohibition of *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988) (improper for prosecutor, in argument, to introduce facts not in evidence).

### III

Barrow contends that the prosecutor's closing argument was inflammatory and deprived him of a fair trial. In closing, the prosecutor asserted that by giving testimony contradictory to the officers' testimony, Barrow effectively called the officers liars.[5] The prosecutor continued this line of argument even after the trial judge sustained Barrow's initial objection.

Barrow also assigns error to the part of the prosecutor's rebuttal argument in which she told the jury that "in order for you to find the defendant not guilty on either of these charges, you have to believe his testimony and you have to

---

[5] "Ladies and gentlemen, there's another interesting aspect to this case, and that is the defendant's testimony. The defendant contradicted the officers on a number of points. He wasn't willing to call the officers liars, but—

"MR. MULLIGAN: Your Honor, I object to that. It was a sustained question or a sustained objection to the question about being a liar.

"JUDGE DONOHUE: All right. I'll sustain the objection.

"MS. STOREY: There is only one inference that can be drawn from the defendant's testimony which is in contradiction with the officer's testimony. And that is that the defendant was calling the officers liars. How do you draw that inference? The officer testified, Officer Maes, that the defendant had a cold wine cooler in his hand when he was arrested. Officer Maes was working, and he was paying attention to what happened, and he made note of that.

"MR. MULLIGAN: I object to that. No evidence of that.

"JUDGE DONOHUE: Overruled.

"MS. STOREY: And, yet, the defendant testified that he didn't have any wine cooler at the time. That is a direct contradiction with the officer. And by that testimony, the defendant is calling the officer a liar.

"What about defendant's testimony that he did not—doesn't recall contacting officer O'Neal and he did not deliver anything to Officer O'Neal? Officer O'Neal told you that he did. Not only that he did but that she spent some time standing face to face with him. The defendant would have remembered, when he makes a cocaine transaction and makes a narcotics transaction and five to 15 minutes later is arrested. So it's not that the defendant doesn't remember. It's that he's calling Officer O'Neal a liar."

completely disbelieve the officers' testimony. You have to believe that the officers are lying." Barrow's objection to this statement was overruled.[6]

It has not been decided in this state whether it is misconduct for a prosecutor to argue that a defendant in essence called the police witnesses liars. It has been said, however, that cross examination in which the prosecutor attempts to get the defendant to call the State's witnesses liars is "argumentative, impertinent and uncalled for". *State v. Green,* 71 Wn.2d 372, 380–81, 428 P.2d 540 (1967) (the error was not so deliberate, flagrant, persistent, or genuinely inflammatory as to warrant a new trial). It was also "incorrect" under the particular facts of another case for a prosecutor to argue that a verdict for defendant means that the jury said the police officers are liars and perjurers. *State v. Brown,* 35 Wn.2d 379, 387, 213 P.2d 305 (1949) (statement although incorrect did not constitute prejudicial error).

Other courts, moreover, consistently have found liar arguments similar to those at issue here to be improper. They reason that arguments about a defendant's opinion of the government's witnesses' credibility are irrelevant and interfere with the jury's duty to make credibility determinations. *See, e.g., United States v. Richter,* 826 F.2d 206, 208–09 (2d Cir. 1987); *United States v. Davis,* 328 F.2d 864, 867 (2d Cir. 1964); *United States v. Hestie,* 439 F.2d 131 (2d Cir. 1971); *People v. Ochoa,* 86 A.D.2d 637, 446 N.Y.S.2d 339, 340 (1982). Based upon this authority and the related Washington cases of *Green* and *Brown,* we hold the arguments at issue here to be misconduct. It was a mischaracterization to say that the defendant was calling the officers liars. The officers simply could have been mistaken about the seller's identity. Furthermore, the jurors did not need to "completely disbelieve" the officers' testimony in

---

[6]"MR. MULLIGAN: Your Honor, I object to that misstatement of the beyond a reasonable doubt standard. It's certainly enough to believe not that they're lying but that they don't know."

order to acquit Barrow; all that they needed was to entertain a reasonable doubt that it was Barrow who made the sale to Officer O'Neal.

We must next decide whether the prosecutor's improper closing arguments require reversal. Prosecutorial misconduct requires reversal when there is a substantial likelihood that the argument affected the jury's verdict. *State v. Mak,* 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986). The burden of proving such prejudice rests with the defense. *State v. Hughes,* 106 Wn.2d 176, 195, 721 P.2d 902 (1986). Unless a defendant objected to the improper comments at trial, requested a curative instruction, or moved for a mistrial, reversal is not required unless the prosecutorial misconduct was so flagrant and ill intentioned that a curative instruction could not have obviated the resultant prejudice. *State v. Ziegler,* 114 Wn.2d 533, 540, 789 P.2d 79 (1990); *State v. Belgarde,* 110 Wn.2d 504, 507, 755 P.2d 174 (1988); *State v. Dunaway,* 109 Wn.2d 207, 221, 743 P.2d 1237, 749 P.2d 160 (1987).

Barrow did timely object to the initial improper remarks made during the prosecutor's first closing argument, as well as to her improper rebuttal argument. It is significant, however, that after the initial objection was sustained, when the prosecutor continued to argue that Barrow essentially was calling the police liars, defense counsel did not object, request that the arguments be stricken, or ask for a curative instruction.[7] Counsel clearly could have minimized the impact of this argument if he had taken any of these steps. A curative instruction particularly could have obviated any prejudice engendered by these remarks.

---

[7] The only objection was to the statement that the defendant "had a cold wine cooler in his hand when he was arrested and that Officer Maes was working, and he was paying attention to what happened, and he made note of that period." This statement was objected to on the basis that "there was no evidence of that", not that the argument was prejudicial or inflammatory.

However, because Barrow did properly object to the initial argument and to the rebuttal argument, we will examine whether there is a substantial likelihood that those comments affected the jury's verdict. "Their prejudicial or inflammatory effect must be viewed in context with the earlier evidence and the circumstances of the trial in which they were made." *Green,* at 381. After comparing this case to other cases involving improper comments, we conclude that it is not substantially likely that the comments affected the jury's verdict.

In *State v. Brown, supra,* the prosecutor warned that "this will become a city of sodomy" in response to arguments advanced on behalf of the appellant. Although the court noted that the comment was not one to be commended, it was held not to constitute prejudicial misconduct. *Brown,* at 386. Similarly, in *State v. Baker,* 30 Wn.2d 601, 607, 192 P.2d 839 (1948), the jury was told that if it did not find the defendant guilty, one of the jurors or the wife of one of them would "wake up some day and find the same thing happens to you." (Italics omitted.) This comment also was not found to constitute prejudicial error. The comments here are far less inflammatory than the comments in either *Baker* or *Brown.*

The court in *United States v. Richter, supra,* a case cited by Barrow, found the improper arguments to constitute reversible error. *Richter,* however, is distinguishable. In *Richter,* the prosecutor goaded the defendant into labeling the testimony of an FBI agent as false, called a second witness on rebuttal to corroborate the first agent's testimony, then emphasized the improper theme of his questions in closing. The cumulative effect of the prosecutor's comments was so prejudicial that a new trial was necessary. *Richter,* at 209.

In this case, the comments were not so inflammatory or prejudicial that reversal is required. On cross examination the prosecutor asked Barrow if he was telling the jury that Officer O'Neal lied. Barrow said that he was not saying that she was lying. The prosecutor tried again to get Barrow to

say that O'Neal was lying, but the trial court sustained defense counsel's objection to the question. When in closing the prosecutor attempted to argue that the inference to be drawn from Barrow's defense was that the police officers were lying, the trial court again sustained Barrow's objection. Despite the sustained objection, the prosecutor continued the argument but Barrow did not renew his objection. Rather, defense counsel in closing attacked the credibility and character of Officer O'Neal. In addressing the weaknesses in the State's case, defense counsel stated:

> Start with Officer O'Neal's testimony. . . . Back in March, she would have been an officer for about nine months. She was obviously very frustrated that night because she's been made by some other Hispanics as a police officer. She was made by other black males as a police officer. She's discouraged. She's not doing her job for making buys. . . . *And maybe she did buy this bindle from somebody, and maybe when she got up to that observation post she couldn't find that person with those binoculars. And maybe she thinks Floyd Barrow should be in jail because he's hanging around at First and Pike or Second and Pike.* But that's not the question. The question is this: Is there sufficient evidence to overcome the presumption of innocence? Have they proven to you beyond a reasonable doubt that Mr. Barrow was the man?

(Italics ours.) Defense counsel argued further:

> People can be just mistaken. They can be mistaken about the identity of a person. They can be mistaken in exactly what they observed. Sometimes folks can be so emotionally involved in a situation or have an interest because of their job or their family or something else that they can even convince themselves of something that's just not true. And, obviously, also, people can lie.
> And police officers are no different than anyone else.

The prosecutor argues that defense counsel's comments provoked her own improper comments. We choose not to resolve this case on the basis of provocation, but, given the arguments of both counsel, it does not appear to us that the prosecutor's improper argument would have the capacity to so inflame the jury that there is a substantial likelihood that the defendant was denied a fair trial. The jury had an opportunity to hear the testimony and draw its own conclusions as to the credibility of witnesses or whether there

was reasonable doubt as to whether the officer was mistaken in her identification. Counsel's arguments were not of a nature to overcome the jury's ability to perform its function.

The judgment and sentence are affirmed.

GROSSE, C.J., concurs.

WINSOR, J.* (dissenting)—The majority holds that the prosecutor's arguments were misconduct, but that the errors are not reversible. I disagree with its conclusion that reversal is not required. When, as here, a defendant preserves error relating to prosecutorial misconduct, reversal is required if the defendant shows that there was a substantial likelihood the misconduct affected the jury's verdict. *State v. Mak,* 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986). I believe Barrow has satisfied this burden.

As Barrow points out, this is not a case in which there is abundant evidence of guilt; indeed, no physical evidence linked Barrow to the purported cocaine sale. The absence of any money or marketable quantities of drugs on his person at the time of arrest gave Barrow's mistaken identity defense plausibility. Thus, the primary question for the jury was whether it was satisfied beyond a reasonable doubt that the officers accurately identified Barrow as the seller. The prosecutor's improper arguments turned the jury's attention away from this issue, and instead called for it to decide Barrow's guilt or innocence on the basis of who was lying: Barrow or the officers. Unfortunately, this is not a question a jury is likely to decide in a defendant's favor, particularly when the defendant is a young male arrested at 2nd and Pike with a narcotics pipe in his possession. It is, therefore, all too likely that the improper argument affected the verdict.

---

*Judge Robert W. Winsor was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

The prosecutor argues that reversal is not required because Barrow's lawyer provoked the prosecutor's liar arguments. Prosecutorial misconduct does not require reversal if the improper remarks were provoked by defense counsel and were in reply to defense counsel's statements. *State v. Davenport,* 100 Wn.2d 757, 760, 675 P.2d 1213 (1984); *State v. La Porte,* 58 Wn.2d 816, 822, 365 P.2d 24 (1961). The majority did not reach this issue because it concluded that the misconduct did not deprive Barrow of a fair trial. Because I disagree with the majority's conclusion, I must consider the prosecutor's provocation argument.

Nothing in Barrow's examination of the State's witnesses in any way called the officers' integrity into question. There simply was no provocation occurring during presentation of the State's case. Nevertheless, during her cross examination of Barrow, the prosecutor tried repeatedly, albeit unsuccessfully, to force him to declare that the police witnesses were liars.[8] Then, in her first closing argument, the prosecutor returned to the liar theme and repeatedly characterized Barrow's testimony as "calling the officers liars". This initial improper argument clearly was unprovoked.

After the State's argument, Barrow's lawyer did question the reliability of parts of the police officers' testimony. He explained that police officers can be mistaken when they identify a particular person as the individual who committed a crime. Then, in explaining the presumption of innocence and the beyond a reasonable doubt standard, defense counsel argued:

> Individuals can be mistakenly charged for crimes. . . . People can be just mistaken. They can be mistaken about the identity of a person. They can be mistaken in exactly what they observed. Sometimes folks can be so emotionally involved in a situation or have an interest because of their job . . . that they can even convince themselves of something that's just not true. And, obviously, also, people can lie.

---

[8]Barrow objected to the prosecutor's liar questions. His objections were, for the most part, sustained before Barrow could reply. The one time Barrow did answer, he said that he was not saying Officer O'Neal was lying.

> And police officers are no different than anyone else. You are to utilize the same criteria in evaluating their testimony. Police officers can be mistaken. They can be overzealous. They can feel pressures . . . to make arrests.

Defense counsel later addressed weaknesses in the State's case, questioning whether the evidence was strong enough to overcome the presumption of innocence:

> Start with Officer O'Neal's testimony. . . . Back in March, she would have been an officer for about nine months. She was obviously very frustrated that night because she's been made by some other Hispanics as a police officer. She was made by other black males as a police officer. She's discouraged. She's not doing her job for making buys. . . . And maybe she did buy this bindle from somebody, and maybe when she got up to that observation post she couldn't find that person with those binoculars. And maybe she thinks Floyd Barrow should be in jail because he's hanging around at First and Pike or Second and Pike. But that's not the question. The question is this: Is there sufficient evidence to overcome the presumption of innocence? Have they proven to you beyond a reasonable doubt that Mr. Barrow was the man?

The State contends that these comments provoked its rebuttal argument that in order for the jury to acquit, it had to believe the officers were lying. Although in other circumstances I might find Barrow's argument sufficiently provocative to excuse subsequent improper argument by the State, I would not do so here.

The scope of the provocation rule is limited. It does not excuse remarks that "go beyond a pertinent reply and bring before the jury extraneous matters not in the record, or are so prejudicial that an instruction would not cure them." *La Porte,* 58 Wn.2d at 822. It also does not excuse an incorrect statement of the law of the case. *Davenport,* 100 Wn.2d at 760–61 (holding that State's response clearly exceeded scope of defendant's "invitation" and was an incorrect legal statement). Here, the State's rebuttal argument went beyond a simple response to the defense argument quoted above. Instead of replying to that argument, the prosecutor misrepresented the issues, the applicable burden of proof, and the factual bases for an acquittal. Her argument is, therefore, beyond the scope of the provocation rule. In any

event, it would be incongruous to invoke the provocation rule on behalf of the State, when it was the State's improper cross examination and initial improper closing argument that prompted the allegedly provoking defense argument. For these reasons, I would hold that the provocation rule does not excuse the State's improper rebuttal argument.

This is not a case in which there was abundant evidence of guilt. We cannot properly rule out the likelihood the prosecutor's improper conduct affected the jury's verdict. I would, therefore, reverse.