FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 MAR -4  AM 10: 27

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,　　　　　)
　　　　　　　　　　　　　　　　)　DIVISION ONE
　　　　　　　　Respondent,　　　)
　　　　　　　　　　　　　　　　)　No. 67406-4-I
　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　UNPUBLISHED OPINION
VANESSA C. RODRIGUEZ,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Appellant.　　　　)　FILED:  March 4, 2013
_____)

DWYER, J. – Vanessa Rodriguez appeals from the judgment and sentence imposed after a jury found her guilty of assault in the third degree.  She contends that the trial court erred in admitting her statement without conducting a CrR 3.5 hearing and that the deputy prosecutor committed reversible misconduct during closing argument.  But Rodriguez waived her right to a CrR 3.5 hearing, and we decline to review the alleged misconduct because Rodriguez failed to lodge a contemporaneous objection on this basis.  We therefore affirm.

I

At about 11:00 p.m. on October 20, 2010, Auburn Police Officers John Postawa and Joshua Matt responded to a reported disturbance near the Meadow Apartments.  Upon arrival, the officers found a group of individuals, including Vanessa Rodriguez, milling about in a courtyard.  After a brief investigation, the officers suspected that Rodriguez's boyfriend "Pee Wee" might have assaulted her.  Officer Postawa then attempted to talk to Rodriguez.

Rodriguez, who was wearing only jeans and a bra, spoke loudly and used exaggerated hand movements. She had bloodshot and watery eyes and smelled of alcohol, and Officer Postawa believed she had been drinking or was moderately intoxicated.

Initially, Rodriguez cooperated with the questioning. When Officer Postawa asked her about Pee Wee, however, she immediately became upset and started yelling "Fuck you, fuck you." Rodriguez eventually jerked her arms up and down, clenched her fists, and took "a lunging step" toward Officer Postawa, leading him to believe she might assault him.

At this point, Officer Postawa decided to restrain Rodriguez for hindering his investigation. Rodriguez resisted as Officer Postawa and Officer Matt placed her in handcuffs and continued to struggle and scream while Officer Postawa escorted her to a nearby police car. Along the way, Officer Postawa let go of Rodriguez when she tried to kick him, and she fell to the ground.

Officer Postawa picked Rodriguez up and placed her down on the back seat of the patrol car, with her legs outside. When Rodriguez resisted attempts to place her legs inside, Officer Postawa went around to the other side of the car and pulled on her shoulders, while Officer Matt attempted to push her legs. As she lay on her back, Rodriguez kicked her legs "like she was peddling a bicycle." At one point, Rodriguez "reared back her knee to her chest with her foot up" and

kicked Officer Matt in the face and hand, causing minor injuries. Ultimately, the officers booked Rodriguez into jail.

On the following morning, a detective contacted Rodriguez at the jail, advised her that she was under arrest for assaulting an officer, and asked if she would talk about the assault. Rodriguez immediately responded, "I was just defending myself."

The State charged Rodriguez with one count of assault in the third degree. At trial, Rodriguez testified that she had been drinking before her arrest to celebrate the release of a relative from prison. During the course of the evening, Rodriguez's boyfriend and the relative got into a fight, which Rodriguez was attempting to break up when the police arrived.

Rodriguez acknowledged that she became upset and resisted the officers' attempts to restrain her. She maintained that the officers pushed her against the trunk of the patrol car while putting on the handcuffs, causing her to fall to the ground, and then threw her into the back seat on her stomach, "hogtied with . . . my hands cuffed behind my back." She denied that she intentionally tried to kick or hurt the officers.

Rodriguez further claimed that she did not know about the assault charge until the following morning in jail, when the detective informed her. During cross-examination, the trial court permitted the deputy prosecutor to ask Rodriguez about her statement to the detective. Rodriguez acknowledged that she told the

detective that she was just defending herself, but reiterated her claim that she did not intend to assault the officers.

The trial court instructed the jury on the defense of voluntary intoxication. The jury found Rodriguez guilty as charged, and the court imposed a 32-day standard range sentence.

II

Rodriguez first contends that the trial court erred in admitting her jailhouse statement because the detective did not advise her of her Miranda[1] rights and the court failed to conduct a CrR 3.5 inquiry into the statement's admissibility. We decline to address these contentions, however, because Rodriguez waived any objection to the statement's admission.

A CrR 3.5 hearing serves to protect constitutional rights. State v. Fanger, 34 Wn. App. 635, 637, 663 P.2d 120 (1983). But "[t]he right to a CrR 3.5 hearing is not itself of constitutional magnitude." Fanger, 34 Wn. App. at 637; see also State v. Williams, 137 Wn.2d 746, 749-56, 975 P.2d 963 (1999). A party may waive his or her right to a CrR 3.5 hearing both expressly and impliedly. Fanger, 34 Wn. App. at 637-38 (defense counsel authorized to waive procedural matters such as a CrR 3.5 hearing on behalf of the client). A voluntariness hearing is not required "'absent some contemporaneous challenge'" to the admission of the

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

defendant's statement. Fanger, 34 Wn. App. at 638 (quoting State v. Rice, 24 Wn. App. 562, 566, 603 P.2d 835 (1979)).

Defense counsel, both orally and in writing, advised the trial court that a pretrial CrR 3.5 hearing was unnecessary. The deputy prosecutor and defense counsel then informed the court that a brief CrR 3.5 hearing might be necessary if Rodriguez testified at trial and the State sought to impeach her with the jailhouse statement. But when the State sought to introduce the statement during Rodriguez's cross-examination, defense counsel objected only on the ground that her direct testimony did not "ope[n] the door" to admission of the statement. Defense counsel did not allege that the statement was involuntary, object to the absence of a CrR 3.5 hearing, or raise any other objection to the admission of the statement. By expressly acknowledging the potential availability of a CrR 3.5 hearing and then failing to raise a timely challenge to the voluntariness of the statement, defense counsel waived the right to a CrR 3.5 hearing. See Fanger, 34 Wn. App. at 638; see also State v. Myers, 86 Wn.2d 419, 426-27, 545 P.2d 538 (1976); Rice, 24 Wn. App. at 567.

Rodriguez's reliance on State v. Alexander, 55 Wn. App. 102, 776 P.2d 984 (1989), is misplaced. In Alexander, the trial court failed to conduct a CrR 3.5 hearing and admitted the defendant's custodial statement despite the defendant's objection "on constitutional grounds." 55 Wn. App. at 103. The facts

in <u>Alexander</u> are therefore clearly distinguishable from those present here. <u>See</u> <u>Williams</u>, 137 Wn.2d at 752.

III

Rodriguez next contends that the deputy prosecutor committed reversible misconduct during closing argument by relying on facts not in evidence and by suggesting that the jury had to find that the police witnesses lied in order to acquit her. A defendant alleging prosecutorial misconduct bears the burden of establishing that the challenged conduct was both improper and prejudicial. <u>State</u> <u>v. Cheatam</u>, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). We generally review misconduct claims in the context of the total argument, the evidence addressed, the issues in the case, and the jury instructions. <u>State v. Boehning</u>, 127 Wn. App. 511, 519, 111 P.3d 899 (2005). But where, as here, the defendant fails to object, we will not review the alleged error unless the defendant demonstrates the misconduct was "so flagrant and ill intentioned that no curative instructions could have obviated the prejudice engendered by the misconduct." <u>State v.</u> <u>Belgarde</u>, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

During closing argument, the deputy prosecutor discussed various factors the jury could consider when assessing witness credibility. Among other things, the deputy prosecutor argued:

> Personal interest in outcome, and I know we talked a little bit about this in voir dire as well. . . . But regardless of whether the defendant is found guilty or not guilty, it's not going to change [the

officers' lives] in any appreciable degree. . . . Still going to be at
Auburn Police, still going to do their normal patrol, and it's not going
to have any real bearing on their lives. The defendant, on the other
hand, that's a different story, for very obvious reasons. She's
facing a criminal charge. So that will affect her life.

Rodriguez contends the deputy prosecutor improperly relied on facts not in evidence. See State v. Jones, 71 Wn. App. 798, 808, 863 P.2d 85 (1993) (closing arguments unsupported by the record are improper). When viewed in context, however, the comments involved nothing more than a general, commonsense observation and clearly fell within the wide latitude afforded the deputy prosecutor to draw and express reasonable inferences from the evidence. See State v. Brown, 132 Wn.2d 529, 566, 940 P.2d 546 (1997). Moreover, even if there were some impropriety, a timely objection and curative instruction would have neutralized any potential prejudice. See State v. Dhaliwal, 150 Wn.2d 559, 576-81, 79 P.3d 432 (2003).

The deputy prosecutor also informed the jury:

[Y]our job is to make that credibility assessment and decide
whether defendant's story should be believed, or whether these two
officers that have no dog in the fight, whose lives aren't going to be
affected appreciably by the outcome of this case, would get up on
the stand and lie to you.

We agree with Rodriguez that the deputy prosecutor's argument improperly suggested the jury would have to find that the police witnesses were lying in order to believe her testimony. See State v. Wright, 76 Wn. App. 811, 824-26,

888 P.2d 1214 (1995) (misconduct to argue that the jury must find the State's witnesses are lying in order to acquit the defendant); State v. Barrow, 60 Wn. App. 869, 875-76, 809 P.2d 209 (1991). But a curative instruction would have prevented any potential prejudice arising from this single, brief instance of misconduct. See Barrow, 60 Wn. App. at 876 (curative instruction could have obviated prejudice resulting from closing arguments that the defendant had effectively called the police officers liars and that in order to find the defendant not guilty, the jury would have to believe the officers were lying). Rodriguez's failure to object precludes further review.

IV

Finally, Rodriguez contends cumulative errors warrant reversal of her conviction. But she has failed to satisfy her burden of demonstrating an accumulation of errors sufficient to require a retrial. See State v. Yarbrough, 151 Wn. App. 66, 98, 210 P.3d 1029 (2009). The cumulative error doctrine does not apply.

Affirmed.

We concur:

-8-