# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48636-9-II |
| Respondent, | |
| v. | |
| KEITH ALAN RATLIFF, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — Keith A. Ratliff appeals the denial of his pretrial requests to proceed pro se and his jury trial convictions for two counts of unlawful possession of a controlled substance.[1] Ratliff argues that the trial court abused its discretion when it denied Ratliff's requests to proceed pro se and that prosecutorial misconduct necessitates the reversal of his convictions. We hold that the trial court properly denied Ratliff's requests to proceed pro se and that Ratliff fails to establish prosecutorial misconduct. Accordingly, we affirm Ratliff's convictions.

FACTS

I. ARREST

In 2015, police arrested Ratliff in downtown Olympia under an outstanding warrant. A search of Ratliff's jacket pockets revealed a one-inch plastic "baggie" containing a small amount

---

[1] RCW 69.50.4013(1).

of methamphetamine and two half pills wrapped in plastic, one of which was oxycodone.  The State charged Ratliff with two counts of unlawful possession of a controlled substance for the methamphetamine and the oxycodone half pill.

## II.  PRETRIAL HEARINGS

### A.  SCHEDULING HEARING

At the hearing to set Ratliff's trial date, Ratliff asked his defense attorney, "How the hell did you come up with [the proposed trial date]?" and said he "want[ed] [his attorney] off [his] f*****g case."  Report of Proceedings (RP) (Nov. 16, 2015) at 7.  Ratliff then spat in his attorney's face and struggled with five corrections officers while yelling and threatening his attorney's life.  The trial court granted Ratliff's attorney's request to withdraw and noted that Ratliff's future appearances would likely be by video.[2]

### B.  INITIAL REQUEST TO PROCEED PRO SE

On December 15, three weeks before Ratliff's trial date, Ratliff's newly appointed attorney moved to allow Ratliff to proceed pro se.  Ratliff sought priority access to the jail's law library as a pro se defendant and claimed that his previous attempts to access the law library had been frustrated.  The trial court noted that Ratliff's request required conducting a lengthy colloquy; accordingly, it requested the parties to schedule a hearing, at which Ratliff would be required to appear by video due to his history of disruptive behavior.

---

[2] Ratliff had previously been required to appear by video at his preliminary appearance and arraignment, although he had refused to do so.

2

### C. DECEMBER 30 HEARING ON MOTION TO PROCEED PRO SE

On December 30 (the week before trial), at the hearing on Ratliff's motion to proceed pro se, Ratliff requested to appear in person. The trial court denied the request, citing the court's "grave concern over the safety and wellbeing of individuals" in the courtroom. RP (Dec. 30, 2015 PM) at 6. In particular, the trial court noted that Ratliff had twice been removed from the courtroom because of "uncontrollable outbursts" that effectively "shut down" court and that Ratliff had consistently been "disrespectful," "aggressive," "extremely vile and offensive," and "very loud." RP (Dec. 30, 2015 PM) at 6-7. The trial court referenced its authority to require video appearances under CrR 3.4 and opined that there was no difference between a video and in-person appearance under the circumstances. The trial court further noted that its video capability fulfilled the requirements of CrR 3.4(d)(3), enabled the judge, counsel, all parties, and the public to see and hear each other, and allowed confidential attorney-client communications.

Ratliff requested to continue the hearing to the morning of trial so that he could personally appear. However, the trial court denied the request, stating, "We're going to [decide your motion] today." RP (Dec. 30, 2015 PM) at 10. The trial court noted that it was ready and willing to hear Ratliff's motion by video and had set aside three hours to conduct a colloquy; however, Ratliff continued to refuse to participate in a colloquy by video. The trial court ruled that "[Ratliff has] chosen not to appear, so the Court is not going to rule on any motion that's not before the Court." RP (Dec. 30, 2015 PM) at 12.

### D. SECOND REQUEST TO PROCEED PRO SE

On the morning of trial, January 5, 2016, Ratliff appeared before a different judge and again requested to proceed pro se. The trial court noted that it was "disinclined" to consider the

3

request, given its untimeliness. 1 RP at 13. However, the trial court allowed Ratliff to explain why his motion to proceed pro se should be considered in light of his previous refusal to engage in a colloquy. It gave Ratliff "five minutes" to explain why it was appropriate for the trial court to consider "the motion that was filed and scheduled for hearing" on December 30. 1 RP at 7. In response, Ratliff stated that he refused to appear by video because "[w]hen you go in that video booth, somebody has control of that switch. . . . You could be sitting there talking, and you're not being heard." 1 RP at 17.

The trial court cut off Ratliff's explanation after Ratliff said that public defenders "don't give a s***t," described his prior lawyer as "a piece of trash," and interrupted the trial court. 1 RP at 18. The trial court noted that because Ratliff's request was made at the commencement of trial, it had quite a bit of discretion. The trial court then determined that it would not grant Ratliff's request to proceed pro se, in light of the history of the proceeding, Ratliff's pattern of "disorderly conduct," and his decision not to participate in a colloquy by video at his prior hearing. 1 RP at 21.

### III. TRIAL

#### A. STATE TESTIMONY

Officer Paul Frailey, who arrested Ratliff, testified that he found the baggie containing a white crystalline powder and two half pills in Ratliff's jacket pockets. Officer Frailey immediately believed the powder inside the baggie to be methamphetamine because he found "similar baggies very frequently working downtown," and a field test confirmed his suspicions. 1 RP at 68-69. Testing later revealed that one of the half pills found on Ratliff contained oxycodone and that the baggie held less than one-tenth of a gram of methamphetamine.

4

Officer Frailey testified that part of his duties involved patrolling the downtown area and getting to know people who lived on the street. Officer Frailey was personally familiar with the local homeless population, and he "[v]ery frequently" encountered controlled substances, particularly methamphetamine, during his downtown patrols. 1 RP at 182. Most commonly, Officer Frailey found "scraper bag[s]"—one-inch bags with very small amounts of methamphetamine. 1 RP at 183. Nonaddicts would retain scraper bags because combining residue from several bags would result in a saleable quantity of methamphetamine. A bag with even a tenth of a gram of methamphetamine "absolutely h[ad] value"—approximately $10. 1 RP at 188. In Officer Frailey's experience, baggies were almost exclusively used for methamphetamine and only rarely for marijuana. Half pills were also "really common" because a pill split in half could be sold for "a little bit more" than a whole pill. 1 RP at 185. Officer Eric Henrichsen, who assisted in Ratliff's arrest, confirmed that it was not uncommon to encounter half pills downtown.

### B. DEFENSE TESTIMONY

Ratliff testified that someone had given him the jacket while he was panhandling on the day of his arrest. Ratliff searched the pockets for valuables, but he claimed that he found only the small baggie and not the package with the half pills. Ratliff testified that he did not know what the baggie was or see anything inside it and that he saved the baggie so that he could use it to store marijuana. Ratliff, who was 60 years old, testified also that he had "done a lot of panhandling" and had lived on the street for most of his life. 1 RP at 160. Ratliff said that he had never personally seen drugs other than marijuana, although he knew that other drugs "look like powder." 1 RP at 165.

5

## C. Prosecutor's Closing Argument

In closing, the prosecutor argued that Ratliff's homelessness was relevant to whether he knew that he possessed methamphetamine and oxycodone. The prosecutor referenced the officers' testimony about "drug culture on the street, especially amongst the homeless population." 2 RP at 240-41. And she claimed that in light of Ratliff's 40 years of living on the streets, it was unreasonable for Ratliff to say that he had never seen any drug other than marijuana.

The prosecutor noted Ratliff's admission that he searched the jacket pockets for valuables and contended that Ratliff would have recognized a scraper bag and that such a bag had value in light of his history of homelessness. Similarly, Ratliff would have found the package containing the pills, known that a half pill, which "gets traded all the time," had value, and retained the pill. 2 RP at 240. Finally, in rebuttal closing argument, the prosecutor argued that Ratliff knew about illicit substances and their values because Ratliff had been on the streets from the late 1970s to the 1990s, "the heyday for drugs in that population." 2 RP at 252. Ratliff did not object to these arguments.

## D. Verdict and Sentencing

The jury found Ratliff guilty of both unlawful possession counts. Ratliff was sentenced to 18 months in prison and a year of community custody. He appeals his convictions.

## ANALYSIS

### I. RIGHT TO PROCEED PRO SE

Ratliff argues that on December 30 and January 5, the trial court unjustifiably and erroneously denied him his right to proceed pro se.[3] We disagree.

### A. PRINCIPLES OF LAW

We review a trial court's denial of a request to proceed pro se for an abuse of discretion. *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or rests upon facts unsupported by the record. *Madsen*, 168 Wn.2d at 504 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). A trial court's discretion "'lies along a continuum, corresponding to the timeliness of the request.'" *State v. Hemenway*, 122 Wn. App. 787, 792, 95 P.3d 408 (2004) (quoting *State v. Vermillion*, 112 Wn. App. 844, 855, 51 P.3d 188 (2002)). If made at the commencement of trial or shortly before, then "'the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter.'" *Vermillion*, 112 Wn. App. at 855 (quoting *State v. Fritz*, 21 Wn. App. 354, 361, 585 P.2d 173 (1978)). The unjustified denial of the pro se right is never harmless error. *Madsen*, 168 Wn.2d at 503 (quoting *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997)).

Amendments VI and XIV of the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to appear pro se. *Hemenway*, 122 Wn. App. at 791. This is so regardless of the fact that the defendant's exercise of the right

---

[3] Ratliff concedes that the trial court properly deferred consideration of his December 15 request.

"will almost surely result in detriment to both the defendant and the administration of justice." *Vermillion*, 112 Wn. App. at 850-51. The right to proceed pro se is not absolute or self-executing, however, and a request to proceed pro se must be both unequivocal and timely. *Madsen*, 168 Wn.2d at 504.

A request to proceed pro se is a waiver of the right to counsel. *Madsen*, 168 Wn.2d at 504. Thus, the trial court must determine whether the request is voluntary, knowing, and intelligent, generally by engaging in a colloquy with the defendant. *Madsen*, 168 Wn.2d at 504. Although a colloquy on the record is preferable, a colloquy is not necessary if the record otherwise indicates that the defendant was aware of the risks entailed by self-representation, which will only rarely be the case. *City of Tacoma v. Bishop*, 82 Wn. App. 850, 856, 920 P.2d 214 (1996); *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

### B. DECEMBER 30 HEARING ON MOTION TO PROCEED PRO SE

First, Ratliff argues that the trial court abused its discretion at the December 30 hearing when it denied[4] Ratliff's request to proceed pro se because Ratliff refused to participate in a colloquy by video. We disagree.

A trial court cannot "stack the deck against a defendant by not conducting a proper colloquy" and then denying the defendant's request to proceed pro se. *Madsen*, 168 Wn.2d at 506. The trial court required that Ratliff appear by video for the December 30 hearing because of Ratliff's prior assaultive and disruptive behavior. The trial court noted that it had set aside three

---

[4] Ratliff characterizes the trial court's ruling on December 30 as not "address[ing]" his request to proceed pro se. Br. of Appellant at 13. But the record shows that the trial court effectively denied Ratliff's request: the trial court stated that it was going to consider the request on December 30 and not at a later date, and the trial court explicitly denied Ratliff's request to defer its ruling.

hours in which to conduct a colloquy and repeatedly stated that it was ready and willing to engage in a full colloquy with Ratliff. Ratliff, however, refused to appear by video to engage in a colloquy, and thus the trial court denied Ratliff's motion to proceed pro se.

By refusing to appear by video, Ratliff prevented the trial court from engaging in the required colloquy with him. Unlike in *Madsen*, where the court held that it is error for a trial court to conduct an insufficient colloquy and then deny a request to proceed pro se, here it was Ratliff, not the trial court, who sabotaged the colloquy. *See* 168 Wn.2d at 506. Accordingly, we hold that the trial court did not abuse its discretion when it denied Ratliff's request to proceed pro se because Ratliff refused to appear by video for the colloquy hearing.

### C. JANUARY 5 REQUEST TO PROCEED PRO SE

Next, Ratliff contends that the trial court abused its discretion on the morning of trial when it determined it would not grant his "renewed" request to proceed pro se. Br. of Appellant at 12. Ratliff argues that his request was timely, with its timeliness measured from the date of his initial request—December 15. Again, we disagree.

Where a trial court delays ruling on a motion to proceed pro se, fairness dictates that the timeliness of the request must be measured from the date of the initial request. *Madsen*, 168 Wn.2d at 508. On December 15, Ratliff made his first request to proceed pro se. The trial court set a hearing for December 30 to conduct the required colloquy and ordered Ratliff to appear by video. At the December 30 hearing, the trial court told Ratliff that it would rule on his motion that day and refused Ratliff's request to postpone its ruling so that Ratliff could appear in person. Thus, at the December 30 hearing, the trial court denied Ratliff's request to proceed pro se. This is not a situation in which the trial court "delayed" its ruling on the request to proceed pro se so that

timeliness is measured from the date of the initial request. *See Madsen*, 168 Wn.2d at 508. Rather, Ratliff's request on the morning of trial was a *second* request to proceed pro se, and we measure that request's timeliness from the morning of trial, when it was made.

On the morning of trial, the trial court allowed Ratliff "five minutes" to explain why it should consider his request to proceed pro se. 1 RP at 13. The trial court noted in particular that it sought an explanation of why Ratliff had chosen not to engage in a colloquy with the trial court on December 30. Finding Ratliff's explanations unsatisfactory, the trial court determined that it was unable to grant his request to proceed pro se. The trial court noted that because Ratliff's request was made at the commencement of trial, it had quite a bit of discretion. Then, the trial court determined that it would not grant Ratliff's request to proceed pro se, in light of the history of the proceeding, Ratliff's pattern of "disorderly conduct," and his decision not to participate in a colloquy by video at his prior hearing. 1 RP at 21. Given the lateness of Ratliff's request and the other factors noted, the trial court's denial of Ratliff's request to proceed pro se was manifestly reasonable. *See Vermillion*, 112 Wn. App. at 855. Accordingly, we hold that the trial court did not abuse its discretion.

## II. PROSECUTORIAL MISCONDUCT

Ratliff requests that his convictions be reversed because the prosecutor's comments about the homeless population amounted to prosecutorial misconduct. We reject Ratliff's prosecutorial misconduct claim.

### A. PRINCIPLES OF LAW

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was improper and prejudicial in the context of the entire trial. *State v.*

*Walker*, 182 Wn.2d 463, 477, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015).  Where, as here, the issue is first raised on appeal, the defendant must further show "'that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice.'"  *Walker*, 182 Wn.2d at 477-78 (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)).

## B.  PROPER

Ratliff contends that portions of the prosecutor's argument improperly relied upon speculation and stereotypes about the homeless population and went beyond reasonable inferences from State testimony.  We disagree because, except for one comment, the prosecutor's remarks were proper.

We review the prosecutor's conduct in its full context.  *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 58, 296 P.3d 872 (2013).  A prosecutor has wide latitude to make arguments to the jury and may draw reasonable inferences from the admitted evidence.  *Yates*, 177 Wn.2d at 58 (quoting *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)).  However, it is improper for a prosecutor to make closing arguments that are unsupported by the evidence.  *Yates*, 177 Wn.2d at 58.  Arguments that are based upon common sense and do not purport to quote from unadmitted evidence are not necessarily prosecutorial misconduct.  *State v. Barrow*, 60 Wn. App. 869, 873-74, 809 P.2d 209 (1991).

Here, Officer Frailey testified at trial that he often found controlled substances downtown and noted that he frequently encountered scraper baggies and half pills, which had value and could be traded.  The prosecutor argued in closing that because he was homeless, Ratliff knew that the plastic baggie had value and retained it to trade and that Ratliff's testimony that he had never seen

any drug other than marijuana was unreasonable in light of his 40 years on the streets. These comments were reasonable inferences from trial testimony and accordingly were not improper.

The prosecutor also argued in closing—without evidentiary support—that Ratliff had lived through the "heyday for drugs in that population," the late 1970s through 1990s. 2 RP at 252. It is not clear, as the State contends, that an adult resident of Thurston County would know that the County's history included a "heyday" of drug use in the homeless community between the late 1970s and 1990s. Accordingly, this "heyday" comment was too specific to fall within the exception for arguments based upon common sense. *See Barrow*, 60 Wn. App. at 873-74. Thus, we hold that the prosecutor's closing argument was proper, with the exception of the "heyday" comment.

## C. NOT PREJUDICIAL

Ratliff points out that whether he knew he possessed a controlled substance was the only issue at trial, so that the alleged prosecutorial misconduct was necessarily prejudicial. As discussed, we hold that the prosecutor's comments were primarily proper, so we need not reach the issue of whether these comments were prejudicial. Further, we hold that the improper "heyday" comment was not prejudicial.

To prevail on a claim of prosecutorial misconduct, the defendant must show prejudice, a "substantial likelihood that the misconduct affected the jury verdict," "in the context of the record and all of the circumstances of the trial." *Glasmann*, 175 Wn.2d at 704.

12

Here, the prosecutor's unsupported "heyday" comment created an inference that Ratliff recognized and retained the baggie and the packaged half pills because he knew that those items had value, based upon Ratliff's living on the streets through the alleged "heyday" of drug use. But the same inference resulted from the prosecutor's arguments that Ratliff would have been familiar with drugs based upon the pervasiveness of drugs in the downtown area and the fact that he was 60 years old and homeless for most of his life. As discussed, these arguments were proper. Further, the same inference also resulted from the officers' testimony, which established that controlled substances, particularly methamphetamine and half pills, were "[v]ery frequently" encountered downtown. 1 RP at 182. Thus, viewing the "heyday" comment in light of the entire record and the circumstances of trial, it is not substantially likely that the "heyday" comment affected the jury verdict. *See Glasmann*, 175 Wn.2d at 704. Accordingly, we hold that Ratliff's prosecutorial misconduct arguments lack merit.

### III. APPELLATE COSTS

Ratliff requests that should the State substantially prevail on appeal, this court deny a cost bill. The State represents to this court that it will not request appellate costs because such a request would be futile. We accept the State's representation, and thus we deny an award of appellate costs to the State.

No. 48636-9-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

MELNICK, J.

SUTTON, J.