2017 OCT -2 AH 8: 54

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75077-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SCOT CHRISTOPHER CUPPLES, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: October 2, 2017 |
| | ) | |

BECKER, J. — Appellant Scot Cupples, convicted of child molestation, contends that the trial court erroneously limited his ability to cross-examine a witness and that the prosecutor engaged in misconduct. Cupples has identified no reversible errors. We affirm.

The alleged victim was the daughter of a woman Cupples lived with. The daughter, 14 at the time of trial, testified that when she was around 11 years old, Cupples molested her on occasions when she was staying at her mother's home. The State also presented testimony from the alleged victim's father, who had reported the abuse to Child Protective Services and to the police. Cupples did not testify. The defense position was that the State lacked sufficient evidence to prove guilt beyond a reasonable doubt. Defense counsel argued the daughter was not a reliable witness. Defense counsel also argued that the father

manipulated the daughter and induced her to fabricate a story about being molested by Cupples.

The jury convicted Cupples on two counts of first degree child molestation. The court imposed a concurrent sentence of 89 months to life on each count. Cupples appeals the judgment and sentence.

Cupples argues that the trial court prevented him from eliciting relevant testimony from the girl's father that would tend to show the father had an ulterior motive to encourage his daughter to accuse Cupples. We will not disturb a trial court ruling that limits the scope of cross-examination unless the ruling reflects a manifest abuse of discretion. State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002).

Criminal defendants are entitled to present testimony and confront adverse witnesses. State v. Hudlow, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983). The "primary and most important component" of the right to confrontation is the right to conduct meaningful cross-examination of adverse witnesses. Darden, 145 Wn.2d at 620. But these rights are not absolute. Darden, 145 Wn.2d at 621. The evidence sought must be at least minimally relevant. ER 402; Darden, 145 Wn.2d at 621; State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). That is, defendants have no right to question witnesses on irrelevant matters. Washington v. Texas, 388 U.S. 14, 16, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence in determining the action more or less probable than it would be without the evidence. ER 401.

2

Before trial, the State moved to exclude evidence of an assault committed by the father against the mother in 2005. Defense counsel asked not to be precluded from raising the issue if it became relevant. The court granted the State's motion but told defense counsel "if you feel that somehow it has become relevant, as long as we do it outside the presence of the jury, I will hear your argument at that point."

During the father's testimony, outside the presence of the jury, defense counsel asked to cross-examine the father about his substance abuse history. Counsel asserted that the father "has dealt with alcohol and drug addiction and disputes with the mother that became physical in nature between the two of them." Defense counsel also sought to ask about four instances when the father contacted Child Protective Services about the mother, before the father reported the alleged sexual abuse by Cupples. He argued that all of this evidence was relevant to show that the father contributed to discord between the parents and to rebut the idea that "his home was one of propriety, that is, that there was nothing going on at his home or by his conduct that anyone would be concerned about around the children."

The court prevented inquiry as to "any physical confrontations between the mother and the father" on the basis that such evidence was irrelevant. The court agreed to allow questions about the father's prior contacts with Child Protective Services and his substance abuse history. The court observed, however, that this line of questioning could open the door to testimony potentially unfavorable to the defense, specifically testimony that the father contacted Child

Protective Services out of concern that adults in the mother's home were using drugs and alcohol in front of the children:

> I will allow you, if you desire, to go into prior referrals to CPS, or calls by [the father] to CPS.
>
> If you do so, the basic parameters of that I'm satisfied the State could inquire into—the use of alcohol and drugs in the presence of the children. And I will allow you to inquire about his drug and alcohol abuse. [The prosecutor] would thereupon be entitled to go into that he's been sober since whenever, and whether [his experience with addiction] was part of the reasons he calls CPS on [the mother]. So it's entirely up to you about that.

The State later amended its offer of proof as to the father's substance abuse history. While the prosecutor had initially represented that the father struggled with addiction until 2006, the prosecutor corrected this by saying that the father actually had addiction problems until 2011. In response to this amended offer of proof, defense counsel again asserted that the father's addiction history was relevant because the father had, in counsel's view, "painted a picture that I don't believe is accurate in terms of the two households." The court reiterated its earlier ruling:

> I am satisfied this isn't about which is the better household for these kids. It's not competing households.
>
> I possibly did not make it clear. My understanding was that the substance abuse might be relevant, but I believe I tied it to the CPS referrals. In fact, I think I indicated that if he, [the father] is a recovering addict that that certainly would give him a perspective and concerns if there are alcohol or substance abuse in [the mother's] household. If [defense counsel] wants to open it up I'm satisfied he's opening that up.

Defense counsel ultimately did not question the father about his addiction history or prior contacts with Child Protective Services.

At another point during cross-examination, defense counsel asked the father whether his son took a video game player to his mother's home sometime in March 2013. The court sustained a relevance objection by the State. Defense counsel explained, outside the jury's presence, that a month before the father reported that Cupples was sexually abusive, the father reported to police "that a Nintendo system belonging to his son had been taken while it was at the mom's residence" and that the father "was upset over the fact that that Nintendo system had been taken." The court ruled, "I'm satisfied that the question was about [the son], and I'm satisfied that's not relevant."

On appeal, Cupples contends it was error to exclude or limit evidence concerning the 2005 assault, the father's prior reports to Child Protective Services, the father's addiction history, and the incident involving the video game player. Cupples further asserts that in light of evidence that the father struggled with substance abuse through 2011, it was error to limit cross-examination on the defense's "competing households" theory.

Cupples has not shown minimal relevance. Cupples makes a blanket assertion that the evidence demonstrated the father's motive to obtain full custody of his children. Cupples fails to articulate with any specificity why the four topics he has identified tended to prove that motive. His brief recites the law at length, but he does not show how the law applies to the facts of this case. At trial, defense counsel was permitted to ask questions pertaining to the nature of the parents' relationship, and the nature of the father's relationship with Cupples, through cross-examination of both the mother and father. We conclude that the

trial court imposed reasonable limitations on Cupples's ability to cross-examine the father.

Cupples challenges comments made by the prosecutor during closing argument. He must show that the prosecutor's conduct was both improper and prejudicial. State v. Carver, 122 Wn. App. 300, 306, 93 P.3d 947 (2004).

The prosecutor told the jury "between direct and circumstantial evidence there is no difference in the eyes of the law. So the reasonable inferences that you take from your commonsense and experience is just as good in the eyes of the law as the testimony of the witnesses." The court overruled a defense objection to this remark.

Cupples argues on appeal that the prosecutor diluted the State's burden of proof by equating it with jurors' common sense and personal experience. When a prosecutor compares the reasonable doubt standard to everyday decision making, it improperly minimizes and trivializes the gravity of the standard and the jury's role. State v. Lindsay, 180 Wn.2d 423, 436, 326 P.3d 125 (2014). It is improper, for example, for a prosecutor to explain the standard by using a narrative about approaching a crosswalk and having confidence "beyond a reasonable doubt" that it is safe to cross. Lindsay, 180 Wn.2d at 436. The prosecutor's remark here is not analogous. Prosecutors may properly ask jurors to invoke their common sense. State v. Barrow, 60 Wn. App. 869, 873-74, 809 P.2d 209, review denied, 118 Wn.2d 1007 (1991). The prosecutor's remark mirrored the standard jury instruction defining circumstantial evidence as "evidence from which, based on your common sense and experience, you may

6

reasonably infer something that is at issue in this case." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.01, at 181 (4th ed. 2016). Cupples does not assign error to this instruction.

Cupples challenges the prosecutor's characterization of testimony given by a nurse who examined the victim. The nurse testified that her examination did not reveal signs of abuse, but that in cases of reported abuse, she normally did not find "indication of any kind of penetration or any kind of trauma." During closing argument, defense counsel asserted there was a "lack of evidence, physical or medical evidence" supporting the allegations against Cupples. During rebuttal, the prosecutor argued that while defense counsel "said the physical examination is not consistent with what happened here," the nurse "said that this is entirely consistent" with what was alleged. The court overruled a defense objection that the prosecutor was arguing facts not in evidence, reasoning "the jury can recall what the testimony was." The prosecutor went on to clarify his assertion to be "that any injuries are by far the exception in connection with what was described to [the nurse] amongst her many, many, many years of physical examinations." Cupples fails to show that the prosecutor misrepresented the evidence. In context, the argument was an appropriate characterization of the nurse's testimony.

Cupples objected when the prosecutor said of two witnesses, a police officer and a social worker, that "they have no personal interest in this." After the trial court sustained the objection, the prosecutor rephrased his argument by stating "Between the witnesses identified, all right, there's no evidence presented

7

of any interest or bias." Cupples challenges the "no personal interest" comment as improper, and the State concedes that it was. Prosecutors may not vouch for the credibility of a witness. State v. Coleman, 155 Wn. App. 951, 957, 231 P.3d 212 (2010), review denied, 170 Wn.2d 1016 (2011). Given that the court sustained an objection to the remark and the prosecutor then rephrased his argument, any potential prejudice was not so significant as to warrant reversal.

Cupples raises three issues in a statement of additional grounds. He first alleges that defense counsel "did not fight" for him. He also asserts that he was never offered a plea bargain and "No one knows what my character is." These allegations do not provide sufficient information to allow for review. Although reference to the record and citation to authorities are not necessary or required, an appellate court will not consider an appellant's statement of additional grounds if it does not inform the court of the nature and occurrence of alleged errors. RAP 10.10(c).

Affirmed.

Becker, J.

WE CONCUR:

8