[No. 28989-6-I.   Division One.   February 22, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. JORGE RODRIGUEZ PADILLA, *Appellant.*

*Soheila Sarrafan* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Catherine Shaffer, Deputy,* for respondent.

PER CURIAM. — Jorge Padilla appeals from his conviction for possession of heroin with intent to deliver. We accelerate review and reverse and remand for a new trial.

FACTS

The State charged Padilla with possession of heroin with intent to deliver. At trial, the only witnesses were Officer Dallas Murry and Padilla.

Murry testified that on March 2, 1991, at approximately 8:30 p.m., he was involved in a narcotics observation operation in the 1500 block of Second Avenue in downtown Seattle. Murry was watching the area, using a pair of 10 x 50 binoculars and a radio to contact other officers. He was directly across the street from Padilla. The lighting was good, and his view was unobstructed.

As Murry watched, two men contacted Padilla. Padilla spoke with them, looked up and down the street, reached with his right hand into the front of his pants, and groped about. When he pulled his hand out, he was holding a piece of white paper.

After retrieving the piece of white paper, Padilla opened it and handed a small item to one of the men who had approached him. The man examined it closely and then returned it to Padilla. Padilla placed the item in his mouth, apparently bit it, and handed it back to the man. The man put the item near his nose as if sniffing it, and then took some currency from his back pocket and handed it to Padilla. He kept the small item.

Padilla folded up the white paper and stuck it back in the crotch area of his pants. He put the currency in his wallet. The two men who had approached Padilla left the area, moving quickly.

Officer Murry left his observation post and, some 3 or 4 minutes later, assisted in arresting Padilla, who had continued to stand in approximately the same area.

Murry subsequently searched Padilla and found a portion of a white napkin, which held 19 small bindles of suspected heroin, in Padilla's underwear. Murry opened and smelled one of the bindles. A field test indicated that the bindle contained heroin. The parties stipulated at trial to admission of a crime lab report which stated that one of the bindles had been tested and that it tested positive for heroin. Murry also discovered that Padilla was carrying $130 in his wallet and $4 in a coat pocket. No narcotics paraphernalia were found in the search.

The only witness called by the defense was Padilla. He testified that he "started doing drugs" just 8 to 10 days before he was arrested, and that he was using heroin six or seven times a day at the time of his arrest. He said that he had purchased the heroin found on his person about a half an hour before his arrest, that he paid $200 for it, and that he hid it in his underwear. He stated "I was going to do it all for myself because I think for longer than three days. I was doing already too much." He also stated that he did not carry any drug paraphernalia because he only used heroin at home.

Padilla denied any drug transaction with the men Officer Murry had seen. According to Padilla, they simply stopped and asked him where they could find "somebody Mexican", and asked for a cigarette.

During the prosecutor's cross examination of Padilla, the following exchange occurred:

Q: Now, Mr. Padilla, you heard Officer Murry yesterday testify that he saw you take something out of your pants and give it to the white male. Basically, he testified that he saw you sell heroine [*sic*] to someone?

A: Yes.

Q: *You are telling us today that he is lying and he didn't see that?*
MR. FLORA: *Objection, Your Honor. That is an improper line of questioning.*
THE COURT: *Overruled.*

Q: *Are you telling us that he is lying?*
MR. FLORA: *Could I have a sidebar?*
THE COURT: *Overruled. I just read the case, counsel.*

Q: Do you remember my question? Officer Murry testified yesterday and said that he saw you sell drugs to someone. *Are you telling us today that he was lying?*

A: I don't know if he [was] lying or not. You know, I didn't deliver. I didn't give nothing to the black man or to the white man either.

Q: So you didn't give an object to him that he gave back?

A: No. They ask me a question for somebody else, and they also ask me for a cigarette.

Q: You didn't reach into your pants and pull out a white bundle like the officer testified?

A: I reach in. I didn't reach in my pants. I don't remember. On the way home, I was start feeling sick for this.

Q: You didn't hand him a little bindle of heroine [*sic*]?

A: I didn't do it.
Q: He didn't hand you money?
A: No.
. . . .
Q: *So your testimony today is that Officer Murry didn't tell the truth?*
A: Yes. I think he didn't tell the truth.
Q: *Why would he lie?*
A: I don't know.
Q: You have no idea?
A: I have no idea.

(Italics ours.)

The defense rested after Padilla finished his testimony. In closing, the prosecutor stated "[a]nd Mr. Padilla says if the police officer isn't telling the truth, I don't know why. It just didn't happen that way. You have to sit there and sit back and say who do you believe." The jury subsequently found Padilla guilty as charged and this appeal followed.

## DECISION

██ Padilla first contends the prosecutor committed misconduct by repeatedly asking Padilla whether Officer Murry was lying. A prosecutor commits misconduct if his or her cross examination is designed to compel a witness to express an opinion as to whether other witnesses were lying. *State v. Stover*, 67 Wn. App. 228, 834 P.2d 671 (1992); *State v. Smith*, 67 Wn. App. 838, 841 P.2d 76 (1992); *State v. Casteneda-Perez*, 61 Wn. App. 354, 810 P.2d 74, *review denied*, 118 Wn.2d 1007 (1991); *State v. Barrow*, 60 Wn. App. 869, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991). The State concedes, and we agree, that the prosecutor in this case committed misconduct during cross examination of Padilla.[1] The State argues however, that the defense failed to preserve the misconduct issue, and even if it were preserved, reversal is not required.

---

[1]We note that the prosecuting attorney at trial does not represent the State in this appeal and, indeed is not a regular member of the prosecutor's office, having received a special appointment as part of a program that gives young attorneys in private firms the opportunity to prosecute routine drug cases. We also note that the error here may underscore a need for some training prior to assigning cases to unexperienced attorneys.

Absent a proper objection, a request for a curative instruction, or a motion for a mistrial, the issue of a prosecutor's misconduct cannot be raised on appeal unless the misconduct was so flagrant and ill intentioned that no curative instructions could have obviated the prejudice engendered by the misconduct. *State v. Barrow, supra* at 876; *State v. Ziegler*, 114 Wn.2d 533, 789 P.2d 79 (1990). An objection to a prosecutor's question is inadequate unless it calls the trial court's attention to the specific reason for the impropriety of the question. *State v. Casteneda-Perez, supra* at 363-64; *State v. Smith, supra* at 846-47.

When the prosecutor first asked Padilla on cross examination whether he was saying that Officer Murry was lying, defense counsel objected on the ground that "[t]hat is an improper line of questioning." The court overruled the objection. When the prosecutor repeated his question, defense counsel said "[c]ould I have a sidebar?" The court denied the request for a sidebar, stating "I just read the case, counsel."

■ Defense counsel's initial objection — "[t]hat is an improper line of questioning" — was somewhat vague and may have been insufficient, by itself, to preserve the issue of misconduct for review. *See Casteneda-Perez*, at 363 (objection on the ground that liar question called for "a comment on the evidence" was too general); *State v. Carlson*, 61 Wn. App. 865, 812 P.2d 536 (1991). We need not decide that question here, however, because defense counsel's subsequent request for a sidebar, together with the objection, adequately preserved the misconduct issue.

In other circumstances, the objection and request for a sidebar might not preserve the issue for review because, as previously noted, an objection must be sufficiently specific to inform the trial court and opposing counsel of the basis for the objection and to thereby give them an opportunity to correct the alleged error. *See Casteneda-Perez*, at 363. However, "the propriety of [a ruling on a general objection] will be examined on appeal if the specific basis for the objection was 'apparent from the context.' " 5 K. Tegland, Wash. Prac., *Evidence* § 10, at 33 (3d ed. 1989) (quoting ER 103(a)(1)); *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987). Here, the

trial court indicated that it understood the grounds for the sidebar request and underlying objection when, in overruling the request, it stated "I just read the case, counsel." This statement indicates that the court had read a case relating to the propriety of "liar" questions and felt that the prosecutor's questions were proper and a sidebar was unnecessary. Furthermore, it appears from the record that defense counsel was familiar with the case the court referred to in refusing the request for a sidebar.[2] Thus, the ground for the objection and request for a sidebar was "apparent from the context", and the misconduct issue was preserved for review.

Having found that Padilla adequately preserved the misconduct issue for review, the next question before us is whether reversal is required.

██ Prosecutorial misconduct requires reversal only if there is a substantial likelihood that the misconduct affected the verdict. *Barrow*, at 876; *Casteneda-Perez*, at 363. Some of the factors considered in determining whether the misconduct likely affected the verdict are whether the prosecutor was able to provoke the defense witness to say that the State's witness must be lying, whether the State's witness's testimony was believable and/or corroborated, and whether the defense witness's testimony was believable and/or corroborated. *See Casteneda-Perez*, at 364.

Here, the prosecutor was able to provoke Padilla to testify that Officer Murry must have lied in his testimony. Because of this, the improper questioning carried a greater potential for prejudice. Furthermore, the prosecutor's closing argument regarding Padilla's and Officer Murry's credibility increased the potential prejudicial impact of the improper questioning.

A review of the evidence convinces us there is a substantial likelihood that the prejudice generated by the improper questioning affected the verdict. The sole issue at trial was whether Padilla possessed the heroin with intent to deliver.

---

[2]In later arguing that the prosecutor should not be allowed to argue in closing that the case boils down to "who is lying", defense counsel stated "I think that the case that the Court referred to would more than suggest that that line of argument is improper unless the defense presents that as a defense."

The evidence regarding Padilla's intent came primarily from Padilla, who denied that he sold any heroin to anyone and claimed the heroin he possessed was for personal consumption, and from Officer Murry, who testified that he observed Padilla act as the seller in what appeared to be a drug transaction. There were some weak areas in Padilla's story, but there was also little corroboration of Officer Murry's testimony.[3] In the end, the case essentially turned on the credibility of the two witnesses. In such a swearing contest, the likelihood of the jury's verdict being affected by improper questioning is substantial.

Reversed and remanded for a new trial.

After modification, further reconsideration denied April 14, 1993.

---

[3]The only independent evidence tending to corroborate Murry's testimony regarding the transaction was the currency and heroin found on Padilla during the search. Murry's own testimony about where he found the heroin and currency in his search of Padilla does not constitute independent corroboration of his earlier testimony about the drug transaction.