[Nos. 23834-2-III; 24313-3-III.   Division Three.   May 23, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY D. DAVIS, *Appellant*.

*In the Matter of the Personal Restraint of* ANTHONY DION DAVIS, *Petitioner*.

416

418

*Nancy P. Collins* and *David L. Dunn* (of *Washington Appellate Project*), for appellant/petitioner.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

¶1 KATO, J. — Anthony Davis was convicted of harassment, unlawful imprisonment, third degree malicious mischief, two counts of fourth degree assault, and violation of a domestic violence protection order. Based on the jury's determination an aggravating factor existed, the court imposed an exceptional sentence on the unlawful imprisonment conviction. Claiming the prosecutor committed misconduct, the evidence did not support the conviction for unlawful imprisonment, and the court erred by imposing an exceptional sentence, Mr. Davis appeals. His personal restraint petition was consolidated with this appeal. We affirm the convictions and dismiss the personal restraint petition.

¶2 Mr. Davis lived with his girl friend, Bobbi Dewey, and her seven-year-old daughter, T.B. On May 7, 2004, the couple had argued throughout the day in a series of telephone calls and e-mails.

¶3 Ms. Dewey and Mr. Davis arrived home that evening at the same time. T.B. went to her room. Mr. Davis undressed and got into bed, where he ate some dinner. Ms. Dewey was doing laundry. She needed to run a quick errand and asked Mr. Davis if he could watch T.B. while she was out. He refused. Ms. Dewey told him their relationship was not working and he had to move out in two weeks.

¶4 Mr. Davis called Ms. Dewey back to the bedroom, where he grabbed her neck and threw her across the room into a nightstand. Mr. Davis grabbed her throat and banged her head into the wall. He threw her into the frame of their iron rod bed and banged her head against the bars.

¶5 T.B. heard the commotion and came into the bedroom. Ms. Dewey told her to go for help, but Mr. Davis told her not to go anywhere. T.B. asked Mr. Davis not to hurt her mom. T.B. grabbed Mr. Davis's arm and, as he pulled her down, she hit the wall. He threatened them and ordered them to go into the living room. There, he broke a picture frame and threatened to hurt Ms. Dewey.

¶6 Mr. Davis and Ms. Dewey went back to their bedroom, where he broke a light. While picking up some glass, Ms. Dewey cut her hand. Mr. Davis realized she was hurt and helped her clean her wound. He got dressed and left.

¶7 Ms. Dewey called 911. Officers Tramell Taylor and Gordon Ennis responded to the apartment. Officer Taylor called Mr. Davis on his cell phone. Mr. Davis said he and Ms. Dewey had argued, but there was nothing wrong with her.

¶8 The State charged Mr. Davis by amended information with harassment, second degree assault, and unlawful imprisonment of Ms. Dewey as the victim. It also charged him with second degree assault and unlawful imprisonment of T.B. as the victim. Mr. Davis was charged with third degree malicious mischief and violation of a domestic violence criminal protection order as well. He was convicted of harassment, unlawful imprisonment, third degree malicious mischief, two counts of fourth degree assault (the lesser included offense to second degree assault), and violation of a domestic violence criminal protection order.

¶9 Along with the jury instructions, the court gave the jury a special interrogatory asking if Mr. Davis knew or should have known T.B. was particularly vulnerable and incapable of resistance due to extreme youth. The jury answered yes.

¶10 The court imposed standard range sentences on all the convictions except the unlawful imprisonment of T.B. Based upon the jury's response to the special interrogatory, the court imposed an exceptional sentence for that conviction. This appeal follows.

██ ¶11 Mr. Davis asserts the prosecutor committed misconduct while cross-examining him, thus requiring reversal. To prevail on a claim of prosecutorial misconduct, the defendant must establish the impropriety of the conduct and a substantial likelihood the misconduct affected the verdict. *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995), *cert. denied*, 516 U.S. 1121 (1996). Reversal is not required if the defendant did not request a curative instruction that would have obviated the error. *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995).

██ ¶12 Mr. Davis did not object to any of the questions he now claims were misconduct. Failure to object to an improper remark constitutes a waiver of the error unless the remark is so flagrant and ill intentioned that it resulted in prejudice which could not have been neutralized by an instruction. *Id.* at 86. Only if there is a substantial likelihood the misconduct affected the verdict must a conviction be reversed. *Id.*

¶13 The first instance of claimed misconduct occurred when the prosecutor was cross-examining Mr. Davis about his alibi. He had testified he was at Chan's Dragon Inn at the time of the assault. The following exchange took place:

Q. And the other staff people then, you know them because you go there?

A. Certainly.

Q. And where are those people?

A. Where are they? What do you mean?

Q. The ones that waited on you that night.

A. Tonight or today?

Q. The ones that waited on you when you were at Chan's on May 7th.

A. You're saying, where are they now?

Q. Where are they today?

A. I'd imagine at work or somewhere at home. I don't know.

Q. They're not here testifying?

A. Absolutely not.

Q. Now, it's been stated and in some other testimony that you might have a drinking problem. What would you say to that?

A. Absolutely not.

Q. Now, you also said, when you went to Chan's for your dinner, not in the bar, that you talked with friends. Who were they?

A. Just people. They weren't friends. I said there were people that just was there at that time. It was sort of early is what I said, sort of early. None of the regulars were there. Like I said, I got there after 4:30 sometime, between 5 and 5:30, you know, the drive there. It wasn't people walking around.

Typically the folks that I know are going to be over in the lounge portion of it, not the restaurant.

Report of Proceedings (RP) at 465-66. Mr. Davis claims this exchange impermissibly shifted the burden of proof from the State to him.

■ ¶14 A prosecutor cannot imply a defendant has a duty to present exculpatory evidence. *State v. Barrow*, 60 Wn. App. 869, 872, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991). A prosecutor may, however, argue reasonable inferences from the evidence presented and may attack a defendant's exculpatory theory. *State v. Blair*, 117 Wn.2d 479, 491, 816 P.2d 718 (1991); *Barrow*, 60 Wn. App. at 872-73. This includes questioning a defendant about the absence of a witness to corroborate an alibi. *State v. Contreras*, 57 Wn. App. 471, 473-75, 788 P.2d 1114, *review denied*, 115 Wn.2d 1014 (1990).

¶15 Mr. Davis's defense was that he was at Chan's Dragon Inn when the assault occurred. But he presented no testimony corroborating this claim. The prosecutor was entitled to attack his alibi and committed no misconduct.

■ ¶16 Mr. Davis also contends it was error for the prosecutor to ask him if witnesses were lying. A prosecutor commits misconduct when her cross-examination is de-

signed to compel a witness to express an opinion that another witness is lying. *State v. Padilla*, 69 Wn. App. 295, 299, 846 P.2d 564 (1993). Questions asking the defendant if testimony was invented also constitutes misconduct. *State v. Neidigh*, 78 Wn. App. 71, 76, 895 P.2d 423 (1995). Such questions are irrelevant and could prejudice the defendant. *Id.* Moreover, asking one witness whether another is lying " 'is contrary to the duty of prosecutors, which is to seek convictions based only on probative evidence and sound reason'." *Id.* at 77 (quoting *State v. Casteneda-Perez*, 61 Wn. App. 354, 363, 810 P.2d 74, *review denied*, 118 Wn.2d 1007 (1991)).

■ ■ ¶17 Misconduct is prejudicial only when, in context, there is a substantial likelihood it affected the jury's verdict. *Id.* at 77. "Without a proper objection, request for a curative instruction, or motion for mistrial, the defendant cannot raise the issue of misconduct on appeal unless it was so flagrant and ill intentioned no curative instruction could have obviated the resulting prejudice." *Id.* "Liar questions and comments are held to be harmless if they 'were not so egregious as to be incapable of cure by an objection and an appropriate instruction to the jury'." *Id.* (quoting *State v. Stover*, 67 Wn. App. 228, 232, 834 P.2d 671 (1992), *review denied*, 120 Wn.2d 1025 (1993)).

¶18 The prosecutor asked Mr. Davis about his telephone conversation with a police officer. He and the officer had given different times for the call. The prosecutor said, "So what you're telling the jury is that that officer lied under oath?" RP at 478. Mr. Davis replied he was just telling the jury what he knew and he was telling the truth.

¶19 The prosecutor also asked him about the testimony of a witness living in Ms. Dewey's apartment building who had heard some noises that night and saw Mr. Davis leaving the area in his car. Claiming he was not in the area, Mr. Davis told the prosecutor the witness's testimony was creative. The prosecution asked if the witness lied under oath; Mr. Davis replied, "Absolutely." RP at 483.

¶20 The last instance occurred when the prosecutor asked Mr. Davis about T.B.'s testimony. The prosecutor asked him why T.B. made up lies. He replied that she did not lie, but just told her mother's story. He said the story was a lie.

¶21 Mr. Davis answered the improper questions. Only once did he agree the witness had lied. For the most part, he simply affirmed he was telling the truth. An objection and curative instruction would have cured any perceived problem, but neither was raised.

¶22 Mr. Davis counters that concerns as to these types of questions led to reversal of a conviction in *Padilla*, 69 Wn. App. at 302:

> In the end, the case essentially turned on the credibility of the two witnesses. In such a swearing contest, the likelihood of the jury's verdict being affected by improper questioning is substantial.

Mr. Davis's case also turned on the credibility of witnesses. But in *Padilla,* the defense made a timely objection, which was overruled, to the improper questioning. Here, defense counsel did not object. Because the improper questions could have been cured by an objection and a proper instruction, the misconduct was not so prejudicial as to require reversal.

¶23 Mr. Davis claims the evidence was insufficient to support his conviction of unlawfully imprisoning T.B. Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to have found all the elements of the crime beyond a reasonable doubt. *State v. Atkins*, 130 Wn. App. 395, 401-02, 123 P.3d 126 (2005). When a defendant makes an insufficiency claim, he admits the truth of the State's evidence and all reasonable inferences are viewed in favor of the State and interpreted against the defendant. *State v. Beasley*, 126 Wn. App. 670, 689, 109 P.3d 849, *review denied*, 155 Wn.2d 1020 (2005). We further defer to the trier of fact on issues of credibility, because it is charged with

resolving conflicting testimony, evaluating the credibility of witnesses, and generally weighing the persuasiveness of the evidence. *Id.*

¶24 "A person is guilty of unlawful imprisonment if he knowingly restrains another person." RCW 9A.40.040(1). Restrain means:

> [t]o restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is without consent if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him has not acquiesced.

RCW 9A.40.010(1).

¶25 The evidence showed that, upon hearing the commotion in her mother's bedroom, T.B. went to see what was happening. Ms. Dewey told her to go get help. T.B. grabbed Mr. Davis's arm and asked him not to hurt her mom. He pulled her to the ground and she hit the wall. He then told her to go sit in the living room. T.B. testified she was scared and did not leave. This satisfies the definition of restraint.

¶26 Mr. Davis claims T.B. was not restrained because she was free to move around the apartment. He relies on *State v. Kinchen*, 92 Wn. App. 442, 963 P.2d 928 (1998). *Kinchen* involved a parent who was charged with unlawful imprisonment for locking his two sons in an apartment while he was at work. *Id.* at 444-48. The court found there was insufficient evidence to support an unlawful imprisonment conviction because the children had alternative ways to safely leave the apartment. *Id.* at 452.

¶27 Here, there were no alternative ways for T.B. to escape. She was able to move about the apartment after the initial altercation, but she was unable to leave and get help. *Kinchen* is inapplicable. The evidence was sufficient to support the conviction.

¶28 Mr. Davis next contends the court erred by giving the jury an interrogatory to determine whether an aggravating factor existed to justify an exceptional sentence. The propriety of judge-imposed exceptional sentences was scrutinized in *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In *Blakely,* the United States Supreme Court held a defendant had a constitutional right to have a jury determine whether the factors permitting an exceptional sentence had been proved beyond a reasonable doubt. *Id.* at 301-02.

¶29 Here, the trial court gave a special interrogatory to the jury in compliance with *Blakely,* asking it to determine if the facts supported finding an aggravating factor. Mr. Davis challenges this procedure, claiming the court acted without authority in giving the special interrogatory. The legislature has since enacted this same procedure for a jury to determine the existence of an aggravating factor. LAWS OF 2005, ch. 68.

¶30 Mr. Davis relies solely on *State v. Hughes,* 154 Wn.2d 118, 110 P.3d 192 (2005), to support his argument. In *Hughes,* our Supreme Court addressed several issues pertaining to *Blakely* and its effects on the exceptional sentence provisions of the Sentencing Reform Act of 1981, chapter 9.94A RCW. The court held the exceptional sentence provisions were still constitutional on their face. *Hughes,* 154 Wn.2d at 134.

¶31 In determining the proper remedy for an exceptional sentence violating *Blakely,* the *Hughes* court stated:

> As RCW 9.94A.535 currently exists, it allows the court to impose a sentence beyond the standard range when it finds "substantial and compelling reasons justifying" an exceptional sentence. And the statute requires that "[w]henever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535. It explicitly directs the trial court to make the necessary factual findings and does not include any provision allowing a jury to make those determinations during trial, during a separate sentencing

phase, or on remand. Furthermore, advocates on each side either explicitly or impliedly concede that no procedure is currently in place allowing juries to be convened for the purpose of deciding aggravating factors either after conviction or on remand after an appeal. To allow exceptional sentences here, we would need to imply a procedure by which to empanel juries on remand to find the necessary facts, which would be contrary to the explicit language of the statute.

*Hughes*, 154 Wn.2d at 148-49. Mr. Davis relies on this language to claim *Hughes* prohibited the empaneling of juries to determine whether an aggravating factor exists. But Mr. Davis ignores the limited holding of *Hughes*:

We are presented only with the question of the appropriate remedy on *remand*—we do not decide here whether juries may be given special verdict forms or interrogatories to determine aggravating factors at trial. But on this limited issue, we agree with petitioners and [the Washington Association of Criminal Defense Lawyers]. Where the legislature has not created a procedure for juries to find aggravating factors and has, instead, explicitly provided for judges to do so, we refuse to imply such a procedure on remand.

*Hughes*, 154 Wn.2d at 149-50. The trial court here gave a special interrogatory to the jury along with its general instructions at the close of the evidence. *Hughes* is inapplicable.

¶32 Mr. Davis contends the court lacked the authority to impose an exceptional sentence using the procedure it did. RCW 9.94A.535 indicates it is the court that must set forth the reasons for an exceptional sentence.

¶33 RCW 2.28.150 provides that "if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws." At the time of Mr. Davis's trial, there was no specific procedure for imposing an exceptional sentence. The court fashioned a process that conformed to the law.

¶34 CrR 6.16(b) provides the court with the authority to submit forms to the jury for special findings that are either

required or authorized by law. This is precisely what the court did. RCW 9.94A.535 permitted the court to enter an exceptional sentence based upon aggravating factors it found to exist. But *Blakely* requires those aggravating factors to be found by a jury. Reading the statute and *Blakely* together, the court submitted a special interrogatory to the jury as to whether an aggravating factor existed. Based on the jury's affirmative answer to that interrogatory, the court found the existence of the aggravating factor and an exceptional sentence was warranted. There was no error.

¶35 Mr. Davis has also filed a statement of additional grounds for review. He argues his Fifth Amendment right to remain silent was violated because he was not given *Miranda* warnings prior to a phone conversation with a police officer. Officers must advise defendants of their right to counsel and their right against self-incrimination when "custodial interrogation" begins. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). "Custodial interrogation" is questioning initiated by police officers when a reasonable person would not feel at liberty to terminate the conversation. *State v. Templeton*, 148 Wn.2d 193, 208, 59 P.3d 632 (2002). The relevant inquiry is whether, under an objective standard, a reasonable person would believe he was in police custody based on the restriction of the suspect's freedom of movement at the time of questioning. *State v. Cunningham*, 116 Wn. App. 219, 228, 65 P.3d 325 (2003).

¶36 Mr. Davis's conversation with the officer took place over a cell phone. He was not in the same location as the officer. He could have ended the call at any time. Because he was not in custody, *Miranda* warnings were not required.

¶37 Mr. Davis also asserts his right to counsel was violated when the officer continued to question him on the phone after being told he would not make any other statements without an attorney. "The Fifth Amendment

right to counsel exists solely to guard against coercive, and therefore unreliable, confessions obtained during in-custody interrogation." *State v. Stewart*, 113 Wn.2d 462, 478, 780 P.2d 844 (1989). Mr. Davis was not in custody. His Fifth Amendment right to counsel had not attached.

¶38 Without explanation, Mr. Davis claims the court's admission of his statements to the officer led to an unfair trial. He argues that because he challenged the officer's testimony and the prosecutor then improperly asked him to state whether the officer had lied under oath, his right to a fair trial was violated. Although the prosecutor's actions were improper, Mr. Davis does not show he was so prejudiced as to require reversal. Mr. Davis did not state the officer had lied; rather, he stood by his version of the conversation. This is no basis for reversal.

¶39 Mr. Davis also contends the CrR 3.5 hearing was conducted in violation of the rule because it was conducted on the second day of trial instead of before the trial started. He has not articulated why this procedure was prejudicial.

¶40 Mr. Davis claims the CrR 3.5 hearing was not the proper way to suppress this evidence because his statements were not a confession. CrR 3.5 applies to statements made by the defendant. The hearing was proper.

¶41 He further contends the State wanted the statements suppressed but failed to submit its request in writing. But the record establishes Mr. Davis was the one who sought to have the statements suppressed. The statements made to the officer on the cell phone were properly the subject of the CrR 3.5 hearing. The procedure used by the court did not prejudice Mr. Davis and the admission of the statements was proper.

¶42 Mr. Davis claims the court erred because it did not conduct an omnibus hearing. CrR 4.5 requires the court to conduct such a hearing. One purpose of the hearing is to determine if there are any constitutional issues that need to be considered. CrR 4.5(c)(iv). Mr. Davis suggests that because he did not have an omnibus hearing, his constitu-

tional rights with respect to the statements he made during the phone call were not addressed. But the court nevertheless considered these issues at the CrR 3.5 hearing. Reversal is not required.

¶43 Mr. Davis has also filed a personal restraint petition that has been consolidated with this appeal. To prevail on his personal restraint petition, he must show that a constitutional error actually and substantially prejudiced him or there was a nonconstitutional error causing a fundamental defect inherently resulting in a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005).

¶44 His first issue relates to the exceptional sentence. Aware of *Blakely* and its constraints on imposing exceptional sentences, the court used its discretion to give a special interrogatory to the jury to determine whether an aggravating factor supporting an exceptional sentence existed. The court complied with *Blakely*. There is no constitutional error.

¶45 Mr. Davis also contends the officer changed his testimony during the CrR 3.5 hearing. Review of the hearing testimony and trial testimony indicates the officer was consistent. Mr. Davis cannot meet the standard to prevail on his personal restraint petition.

¶46 He next asserts he suffered substantial prejudice when the State amended the information to add five new charges. The State filed its amended information about five months after it filed its initial charges and two and a half months prior to trial. Amendments to an information are liberally allowed prior to trial. *State v. Pelkey*, 109 Wn.2d 484, 490, 745 P.2d 854 (1987). He shows no prejudice. There is no error.

¶47 Mr. Davis contends the court lacked the authority to impose a drug and alcohol evaluation as part of his community custody. A court's decision imposing these conditions is reviewed for an abuse of discretion. *State v. Williams*, 97 Wn. App. 257, 263, 983 P.2d 687 (1999), *review denied*, 140 Wn.2d 1006 (2000).

¶48 The victim testified Mr. Davis had been drinking on the night of the incident. Given her statements, the court acted within its discretion to order an evaluation. The court did not err.

¶49 Mr. Davis claims the court revoked his driver's license as part of his sentence. But the record reflects his license was not revoked.

¶50 He takes issue with serving his probation on the misdemeanor sentences under the supervision of the Department of Corrections. This is permissible under RCW 9.95.204.

¶51 Mr. Davis also contests his serving three years' probation instead of two. The court suspended his sentence on the four misdemeanor convictions but ordered them to run consecutive to the felony sentences, the effect of which was to give Mr. Davis three years probation rather than two. So structuring his sentence was within the court's discretion. *See* RCW 9.92.060, .080.

¶52 Mr. Davis contends the court erred by revoking his bond. But he did not present any evidence relating to this issue. He fails to establish how the revocation of his bond affected his trial or his judgment and sentence.

¶53 The convictions are affirmed and the personal restraint petition is dismissed.

BROWN, J., and THOMPSON, J. PRO TEM., concur.

Review granted at 159 Wn.2d 1019 (2007).