# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47963-0-II |
| Respondent, | |
| v. | |
| JOHN BENTON RAGLAND, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — John Benton Ragland appeals his convictions for one count of first

degree rape of a child, three counts of first degree child molestation, one count of first degree

incest, and one count of second degree incest.  Ragland argues that (1) the trial court erred by (a)

failing to give unanimity instructions for three of the charges, (b) finding I.M.R.,[1] a child victim,

was competent to testify at trial, and (c) ordering Ragland to pay legal financial obligations

(LFOs) to cover the cost of his extradition without conducting an individualized inquiry into his

ability to pay the LFOs; and (2) the prosecutor committed flagrant and ill-intentioned misconduct

by (a) asking Ragland on cross-examination whether I.M.R. and S.D.R. were lying, (b)

misstating the law regarding jury unanimity, (c) misstating the law and minimizing its burden of

---

[1] We use initials to identify minor victims. Gen. Order 2011−1 of Division II, *In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts/.

proof during closing argument, and (d) disparaging the role of defense counsel during rebuttal argument.[2]

We hold that the trial court erred by failing to give unanimity instructions for the first degree rape of a child, first degree incest, and second degree incest charges. But we reject Ragland's remaining arguments. Accordingly, we affirm the three counts of first degree child molestation, and we reverse Ragland's first degree rape of a child, first degree incest, and second degree incest convictions and remand for a new trial on those counts.

FACTS

I. BACKGROUND

Ragland lived in Olympia with his wife Bonnie and their three children, including his daughter I.M.R. and his son S.D.R., until December 2011.[3] From April 2010 until he left the home in December 2011, Ragland looked after his children while Bonnie worked the night shift. I.M.R. and S.D.R. were approximately six and four years old, respectively.

In May 2013, I.M.R. reported to Bonnie that Ragland repeatedly forced her to perform oral sex on him and S.D.R. while Bonnie was at work. Bonnie took the children next door to her sister's house. There, S.D.R. also disclosed that Ragland told him to put his finger in Ragland's rectum. Bonnie called police.

---

[2] Ragland also argues that the trial court erred in miscalculating his offender score, that his defense counsel was ineffective by failing to argue that his convictions were the same criminal conduct, and asks this court to waive appellate costs. Because we are remanding for a new trial on the first degree child rape, first degree incest, and second degree incest counts, we do not consider Ragland's additional arguments.

[3] We refer to Bonnie Ragland by her first name to avoid confusion, intending no disrespect.

The State charged Ragland with first degree child rape of I.M.R. (count I),[4] first degree child molestation of I.M.R (count II),[5] first degree child molestation of S.D.R. (count III),[6] first degree child molestation of S.D.R. (count IV),[7] first degree incest of I.M.R. (count V),[8] and second degree incest of S.D.R. (count VI).[9]

Prior to trial, Detective Chris Ivanovich conducted a forensic interview of I.M.R. and S.D.R. During the interview, I.M.R. told Detective Ivanovich that Ragland made her perform oral sex on him and S.D.R., and Ragland forced her to put her finger in his rectum. S.D.R. reported that Ragland touched his penis multiple times and forced him to touch Ragland's penis. S.D.R. also disclosed that he witnessed I.M.R. touch Ragland's penis with her hand. Later, Ragland's defense counsel interviewed I.M.R. and S.D.R. During that interview, I.M.R. disclosed that Ragland vaginally raped her.

## II. COMPETENCY HEARING

The trial court held a competency hearing for I.M.R. and S.D.R. At the hearing, Bonnie testified that I.M.R. suffers from developmental delays because of brain hemorrhaging when she was born.

The State then questioned I.M.R. The following exchange took place:

---

[4] RCW 9A.44.073.

[5] RCW 9A.44.083.

[6] RCW 9A.44.083.

[7] RCW 9A.44.083.

[8] RCW 9A.64.020(1).

[9] RCW 9A.64.020(2).

[STATE]: Okay. [I.M.R.], what's the name of the chair you're sitting in?
[I.M.R.]: The truth chair.
[STATE]: Why do we call it the truth chair?
[I.M.R.]: Because we need to tell the truth.
[STATE]: And if I told you that my shirt is red, would that be the truth or a lie?
[I.M.R.]: A lie.
. . . .
[STATE]: Is it good or bad to tell the truth?
[I.M.R.] Good.
[STATE]: Why?
[I.M.R.]: Because I do not want my dad to get out of jail.
[STATE]: Okay. Is it good or bad to tell a lie?
[I.M.R.]: Bad.
. . . .
[STATE]: What happens if you tell a lie?
[I.M.R.]: We can get—go somewhere called—for kid jail it's called juvie.

1 Verbatim Report of Proceedings (VRP) (June 15, 2015) at 9-10. I.M.R. also testified that she had secret cameras hidden around the courtroom and testified about an incident at a grocery store that Bonnie later refuted.

Ragland objected to I.M.R.'s competency to testify at trial, arguing that she did not understand her obligation to tell the truth. Ragland explained that I.M.R. "exhibited some signs of the ability to, like most children[,] have fantastical stories or other things like that that can definitely blur the line between what's true and not." 2 VRP (June 18, 2015) at 55.

The trial court disagreed with Ragland, finding that I.M.R. "explained the truth chair, what happens when you don't tell the truth and, as I indicated, [she] accurately answered questions regarding objective facts that were true or not true." 2 VRP (June 22, 2015) at 99. While the court acknowledged that I.M.R.'s testimony was not always completely accurate, the court concluded that "those matters go to the weight of her testimony not to her competency." 2 VRP (June 22, 2015) at 99. The trial court ultimately found I.M.R. competent to testify at trial.

4

III. TRIAL

At trial, S.D.R. testified that he saw I.M.R. perform oral sex on Ragland multiple times. S.D.R. also stated that Ragland performed oral sex on him but that he did not touch Ragland's penis. On cross-examination, S.D.R. testified that he did touch Ragland's penis but not with his hand or any other body part.

I.M.R. testified about instances of vaginal and anal penetration, but she testified that it only occurred once in her home. I.M.R. did not recall where in her home or when other instances occurred. I.M.R. also testified that she did not perform oral sex on Ragland. Statements I.M.R. and S.D.R. made to Bonnie and Detective Ivanovich were also admitted at trial.

Ragland testified in his defense and generally denied his children's allegations. On cross-examination, the State asked Ragland, "So you heard what [I.M.R.] said and you heard what [S.D.R.] said. Your testimony is that they're lying?" VRP (July 13, 2015) at 743. Ragland objected to the State's question only on the ground that the question opened the door to ER 404(b) evidence that the trial court previously ruled was not admissible.

The trial court overruled Ragland's objection, and the State repeated its question. Ragland replied: "No, I'm not saying that they're liars like you asked me. I'm saying that I believe that they're being told to lie. I would never call my kids liars, they'd have to know what it is first." VRP (July 13, 2015) at 743.

The parties presented closing arguments. During its closing argument, the State first addressed the court's reasonable doubt instruction. The State described "reasonable doubt" in the following manner: "If . . . you have an abiding belief in the truth of the charge, then you are

satisfied beyond a reasonable doubt. Ladies and gentlemen, if you walk out of here and you say, 'I believe those kids,' that's an abiding belief. That's beyond a reasonable doubt." VRP (July 13, 2015) at 776. The State then addressed each individual charge Ragland faced:

> We have to focus specifically on sexual intercourse. . . .
> . . . .
> Now, you're required to define or determine unanimously which one of those you agree with, which one of those happened. You only have to pick one. I submit to you, ladies and gentlemen, you have three to choose from.
> Did sexual intercourse between the defendant and I.M.R. occur? Yes. Has the State proven beyond a reasonable doubt Count I, rape of a child in the first degree? Yes. . . .
> Now, the Court instructed you about a unanimity instruction, and basically what that means is that any count of child molestation in the first degree, there are three of them, you have to decide unanimously on one particular act, that you believe one particular act occurred. Well, for Count II that's not going to really apply because Count II deals with [I.M.R.]. . . .
> . . . .
> . . . [S.D.R.] provided you with the information you need to return a verdict of guilty on both Counts III and Count IV. Specifically, if you all believe that the defendant touched [S.D.R.'s] penis on one occasion in that date range, that's sufficient. Or if you were to believe that the defendant made [S.D.R.] touch the defendant's penis within that date range, that's sufficient.
> . . . .
> Let's talk about Count V. . . . Again, three options with regard to sexual intercourse. . . .
> Count VI talks about incest in the second degree, and that is it relates to [S.D.R.], talks about sexual contact, not sexual intercourse.

VRP (July 13, 2015) at 791-94.

> On rebuttal, the State argued that if the jury
>
> believe[d] that these children suffered these acts at the hands of their father . . . if you have an abiding belief, if you walk out of this room and say yes, in fact, I think these children did suffer these acts by their father, you have enough evidence beyond a reasonable doubt.

VRP (July 13, 2015) at 817. The State continued, "[Defense counsel] asks you to look at the plausibility of other scenarios. Look over here and look over here and look over here. Don't

look at actually what the kids said." VRP (July 13, 2015) at 817. Ragland did not object to any

of the State's statements during closing or rebuttal argument.

The trial court gave a *Petrich*[10] instruction that applied only to the child molestation

charges, stating:

> The State alleges that the defendant committed acts of Child Molestation in the
> First Degree on multiple occasions. To convict the defendant on any count of Child
> Molestation in the First Degree, one particular act of Child Molestation in the First
> Degree must be proved beyond a reasonable doubt, and you must unanimously
> agree as to which act has been proved. You need not unanimously agree that the
> defendant committed all the acts of Child Molestation in the First Degree.

Clerk's Papers (CP) at 275. The trial court did not give *Petrich* instructions for the first degree

rape of a child, first degree incest, or second degree incest charges, and the State did not elect

which act it was relying on to support a conviction for each charge.

## IV. SENTENCING

The jury found Ragland guilty of all charges. At sentencing, the State's request for

discretionary LFOs included $2,158.30 for extradition costs and $1,000.00 for the cost of an

expert witness. Ragland objected, arguing that he was indigent and would be unable to pay the

fees while incarcerated. The court imposed mandatory LFOs and the extradition costs. Ragland

appeals.

## ANALYSIS

### I. UNANIMITY INSTRUCTION

Ragland argues, for the first time on appeal, that the trial court erred by failing to give a

unanimity instruction for Ragland's first degree rape of a child, first degree incest, and second

---

[10] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *abrogated in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988).

degree incest charges. The State argues that Ragland waived this issue because it is not a manifest constitutional error. We disagree with the State and hold that the trial court erred by failing to give a unanimity instruction for these three charges and that the error is not harmless beyond a reasonable doubt.

To convict a defendant of a criminal charge, the jury must be unanimous that the defendant committed the criminal act charged. *State v. Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). When the State presents evidence of multiple acts that relate to one charge, the State must either elect which act is relied on for a conviction or the trial court must instruct the jury to unanimously agree on one specific criminal act. 159 Wn.2d at 511. If there is neither an election nor a unanimity instruction in a multiple acts case, omission of the unanimity instruction violates the defendant's constitutional right to a unanimous jury verdict and is presumed to result in prejudice. 159 Wn.2d at 512. The error arises from the possibility that some jurors relied on one act and others relied on another. 159 Wn.2d at 512.

Generally, a defendant may raise the issue of jury unanimity for the first time on appeal. *State v. Kitchen*, 46 Wn. App. 232, 234, 730 P.2d 103 (1986), *aff'd on other grounds*, 110 Wn.2d 403, 756 P.2d 105 (1988). Reversal is required unless we determine that the error is harmless beyond a reasonable doubt. *Coleman*, 159 Wn.2d at 512. The error is harmless beyond a reasonable doubt if no rational juror could have entertained a reasonable doubt about any of the alleged acts. 159 Wn.2d at 512.

Here, Ragland was charged with first degree rape of a child and first degree incest, relating to acts committed against I.M.R., as well as second degree incest for acts committed against S.D.R. At trial, I.M.R. testified about various instances of vaginal and anal penetration.

8

I.M.R. did not recall where in her home or when other instances occurred. I.M.R. also testified that she did not perform oral sex on Ragland.

S.D.R. testified that he saw I.M.R. perform oral sex on Ragland multiple times. S.D.R. also stated that Ragland performed oral sex on him but that he did not touch Ragland's penis. On cross-examination, S.D.R. testified that he did touch Ragland's penis but not with his hand or any other body part. In addition, statements I.M.R. and S.D.R. made to Bonnie and Detective Ivanovich were admitted at trial. These statements included contradictory accounts of Ragland's sexual contact.

Ragland testified in his defense and denied the allegations. The State did not elect which act it was relying on for a conviction on each charge, and the trial court did not give an instruction to assure jury unanimity as to any one of the several criminal acts presented.

While I.M.R. and S.D.R. described separate acts that were independently capable of constituting the charged offenses, they were unable to describe the acts with specificity. I.M.R. and S.D.R. were uncertain about the type of sexual contact that took place, where it took place, and how frequently it occurred. Further, I.M.R. and S.D.R. provided contradictory testimony about the sexual contact.

Because there was conflicting testimony and a lack of specificity as to each act, a rational juror could have entertained reasonable doubt as to whether one or more of the acts actually occurred. As a result, the jurors could have rested their finding of guilt on different acts. Therefore, the trial court erred in failing to give unanimity instructions for the first degree rape of a child, first degree incest, and second degree incest charges, and the error is not harmless

beyond a reasonable doubt. Accordingly, we reverse Ragland's first degree rape of a child, first degree incest, and second degree incest charges and remand for a new trial on those charges.

## II. WITNESS COMPETENCY

Ragland argues the trial court abused its discretion by determining that I.M.R. was competent to testify at trial because she was unable to differentiate between the truth and a lie. We disagree.

The determination of witness competency is within the sound discretion of the trial court because the trial court is in the best position to observe a potential witness. *State v. Kennealy*, 151 Wn. App. 861, 878, 214 P.3d 200 (2009). As a result, "[t]here is probably no area of law where it is more necessary to place great reliance on the trial court's judgment than in assessing the competency of a child witness." *State v. Borland*, 57 Wn. App. 7, 11, 786 P.2d 810 (1990). The competency of a child is not easily reviewable in a written record. *State v. Woods*, 154 Wn.2d 613, 617, 114 P.3d 1174 (2005) (plurality opinion), *as amended* (July 27, 2005). We must rely on the trial court judge who sees the witness, notices her manner, and considers her capacity and intelligence. *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). Accordingly, we review a trial court's competency determination for a manifest abuse of discretion. *Woods*, 154 Wn.2d at 617.

A witness is presumed competent to testify. RCW 5.60.020. A child's age is not determinative of her competency to testify. *Woods*, 154 Wn.2d at 617. Instead, a child is competent to testify if she: (1) understands the obligation to speak the truth on the witness stand; (2) has the mental capacity, at the time of the occurrence concerning which she is to testify, to receive an accurate impression of it; (3) has a memory sufficient to retain an independent

recollection of the occurrence; (4) has the capacity to express in words her memory of the occurrence; and (5) has the capacity to understand simple questions about the occurrence. 154 Wn.2d at 618 (citing *Allen*, 70 Wn.2d at 692). A "long-standing, often-observed inability to distinguish what was true from what was not" may demonstrate that a witness lacks the ability to distinguish between the truth and a lie. *State v. Karpenski*, 94 Wn. App. 80, 106, 971 P.2d 553 (1999), *overruled on other grounds by State v. C.J.*, 148 Wn.2d 672, 63 P.3d 765 (2003). Inconsistencies in a child's testimony go to the weight and credibility of her testimony, not her competency. *Kennealy*, 151 Wn. App. at 878.

During the competency hearing, I.M.R. stated that she was sitting in the "truth chair" and that it was important for her to tell the truth. 1 VRP (June 15, 2015) at 9. The prosecutor asked her a series of questions about the difference between a truth and a lie, which she correctly answered. I.M.R. testified that it was bad to tell a lie because she could "go somewhere called . . . juvie," and she promised to tell the truth. 1 VRP June 15, 2015 at 10, 13. The trial court addressed each of the five *Allen* factors and found I.M.R. competent to testify. With regard to the first factor, the understanding of the obligation to speak the truth, the court found:

> [I.M.R.] does have some developmental delays. . . . [S]he did describe, however, the truth chair and the difference between truth and lies and the consequences one can receive for lying.
> . . . .
> Additionally, regarding [I.M.R.], given the nature of her delays . . . if anything, that underscored her understanding and need to speak to the truth while she was on the witness stand. There definitely were some items that [I.M.R.] testified to that were not completely accurate . . . . I conclude that those matters go to the weight of her testimony not to her competency.

2 VRP (June 22, 2015) at 97-99.

11

The record reflects that I.M.R. understood the importance of telling the truth.  I.M.R. testified that she knew the difference between a truth and a lie and was able to accurately respond to examples of each.  As a result, I.M.R.'s testimony supports the trial judge's conclusion that she understood the obligation to speak the truth and that she was competent to testify.  While the trial court recognized that I.M.R.'s testimony was sometimes inaccurate or contradictory, her inconsistencies did not demonstrate a long-standing or often-observed inability to distinguish the truth from a lie.  Instead, inconsistencies in I.M.R.'s testimony go to the weight and credibility of her testimony.  Therefore, the trial court did not manifestly abuse its discretion in allowing I.M.R. to testify at trial.

### III.  LEGAL FINANCIAL OBLIGATIONS

Ragland next argues that the sentencing court erred in imposing discretionary legal financial obligations (LFOs) on him to cover the cost of his extradition without first conducting an individualized inquiry into his ability to pay the LFOs.  While it appears that the trial court adequately considered Ragland's ability to pay, we do not analyze this issue because we recognize that Ragland will be resentenced.

### IV.  PROSECUTORIAL MISCONDUCT

Ragland argues the prosecutor made several improper remarks during questioning and closing argument.  These arguments fail.

To establish prosecutorial misconduct, a defendant bears the burden of proving the prosecutor's conduct was both improper and prejudicial.  *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).  If a defendant meets this burden, we may reverse the defendant's conviction.  *State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012).

If a defendant establishes the prosecutor's conduct was improper, the court must determine whether the defendant was prejudiced. 174 Wn.2d at 760. Where, as here, a defendant fails to object to alleged prosecutorial misconduct, he is deemed to have waived any error unless he shows the misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." 174 Wn.2d at 760-61. To meet this heightened standard, the defendant must show that "(1) 'no curative instructions would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

A.    *Asking Whether I.M.R. and S.D.R. Were Lying*

First, Ragland argues the prosecutor committed misconduct by asking him on cross-examination whether I.M.R. and S.D.R. were lying. The State concedes that the prosecutor's question was improper, but it argues that the issue is not preserved for appeal because defense counsel made an inadequate objection at trial. We agree with the State.

It is improper for a prosecutor to ask a witness whether another witness is lying. *State v. Ramos*, 164 Wn. App. 327, 334, 263 P.3d 1268 (2011). A defendant's "objection to a prosecutor's question is inadequate unless it calls the trial court's attention to the specific reason for the impropriety of the question." *State v. Padilla*, 69 Wn. App. 295, 300, 846 P.2d 564 (1993).

When a defendant fails to adequately object to a prosecutor's improper question, the error is waived unless the prosecutor's misconduct was so flagrant and ill-intentioned that a curative instruction could not have obviated the resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747,

13

202 P.3d 937 (2009). Further, reversal is required only if the defendant can show a substantial likelihood that the misconduct affected the verdict. *Padilla*, 69 Wn. App. at 301. To determine whether a prosecutor's misconduct likely affected the verdict, we consider "whether the prosecutor was able to provoke the defense witness to say that the State's witness must be lying, whether the State's witness's testimony was believable and/or corroborated, and whether the defense witness's testimony was believable and/or corroborated." 69 Wn. App. at 301.

On cross-examination, the prosecutor asked Ragland if I.M.R. and S.D.R. were lying, and Ragland objected on the ground that the prosecutor's question opened the door to ER 404(b) evidence that the trial court previously ruled was improper. The trial court overruled Ragland's objection, and the prosecutor again asked whether I.M.R. and S.D.R. were lying. Ragland replied: "No, I'm not saying that they're liars like you asked me. I'm saying that I believe they're being told to lie. I would never call my kids liars, they'd have to know what it is first." VRP (July 13, 2015) at 743.

The State properly concedes that it was improper for the prosecutor to ask Ragland whether I.M.R. and S.D.R. were lying. However, despite the prosecutor's improper question, Ragland objected on ER 404(b) grounds. Because his objection did not adequately call the trial court's attention to the specific reason for the impropriety of the prosecutor's question, Ragland waived any error unless the prosecutor's misconduct was flagrant and ill-intentioned. To discern whether reversal is required, we must determine whether there is a substantial likelihood that the prosecutor's misconduct affected the jury's verdict.

Ragland fails to show that there is a substantial likelihood that the prosecutor's misconduct affected the jury's verdict. The prosecutor did not provoke him to testify that I.M.R.

and S.D.R. must be lying or whether they were believable or corroborated. Instead, Ragland said he would never call his children liars, and he argued that I.M.R. and S.D.R. were coached to lie about the abuse. This statement alerted the jury to the fact that there could be conflicts in testimony for reasons other than false testimony, and it was consistent with the defense theory Ragland presented to the jury. Accordingly, the prosecutor's misconduct was not likely to have altered the outcome in this case. Further, a curative instruction could have cured any prejudicial effect of the prosecutor's improper statement. Because Ragland fails to show that a curative instruction could not have obviated any resulting prejudice, Ragland has waived this issue.

B.      *Misstatement of Jury Unanimity*

Ragland also argues the prosecutor committed misconduct by misstating the law regarding jury unanimity on the acts underlying the first degree child molestation charges. Specifically, Ragland argues the prosecutor instructed the jury to disregard the trial court's unanimity instruction for the child molestation of I.M.R. charge and that she encouraged the jury to convict Ragland of the first degree child molestation of S.D.R. charges without finding separate and distinct acts to support each count. We disagree.

A prosecutor commits misconduct if she misstates the law in closing argument. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). We review a prosecutor's statements during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the closing argument, and the jury instructions. *State v. Walker*, 164 Wn. App. 724, 730, 265 P.3d 191 (2011). And we presume that the jury follows the court's instructions absent evidence to the contrary. *State v. Dye*, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013).

15

No. 47963-0-II

The trial court instructed the jury that "[t]o convict the defendant on any count of Child Molestation in the First Degree, one particular act of Child Molestation in the First Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved." CP at 275. During closing argument, the prosecutor stated:

> Now, the Court instructed you about a unanimity instruction, and basically what that means is that any count of child molestation in the first degree, there are three of them, you have to decide unanimously on one particular act, that you believe one particular act occurred. Well, for Count II that's not going to really apply because Count II deals with [I.M.R.].

VRP (July 13, 2015) at 791-92.

The prosecutor then discussed the first degree child molestation charges pertaining to both I.M.R. and S.D.R. She continued, "[I]f you go back to that abuse that we talked about, the abuse disclosures by [I.M.R.] . . . you get to decide what you believe but it has to be unanimous." VRP (July 13, 2015) at 792. Then, in discussing the first degree child molestation of S.D.R. charges, the prosecutor noted that

> [S.D.R] provided [the jury] with the information [it needs] to return a verdict of guilty . . . . Specifically, if you all believe that the defendant touched [S.D.R.'s] penis on one occasion in that date range, that's sufficient. Or if you were to believe that the defendant made [S.D.R.] touch the defendant's penis within that date range, that's sufficient.

VRP (July 13, 2015) at 793. Ragland did not object.

While Ragland was charged with one count of first degree child molestation regarding I.M.R., the State argued that multiple acts satisfied a conviction of that charge. As a result, the jury was required to unanimously agree on one act underlying a conviction of first degree child molestation. Accordingly, the prosecutor misstated the law in arguing that the jury did not have to "decide unanimously on one particular act" constituting first degree child molestation of

16

I.M.R. VRP (July 13, 2015) at 791-92. Further, the prosecutor's argument regarding unanimity for the first degree child molestation charges of S.D.R. is convoluted. It is unclear whether the prosecutor argued that separate and distinct acts must support each first degree child molestation charge or whether she argued that either act was sufficient for a conviction on both counts.

Despite the prosecutor's improper and unclear description of the unanimity instruction, we presume that the jury followed the trial court's unanimity instruction. As a result, any potential prejudice was cured by the court's instruction. Further, Ragland does not show that the prosecutor's argument had a substantial likelihood of affecting the jury's guilty verdict on the three first degree child molestation charges. Accordingly, because Ragland fails to meet his burden of showing prejudice, Ragland has waived this issue.

C.      *Misstatement of the State's Burden of Proof*

Ragland also argues the prosecutor committed misconduct by misstating the law and minimizing its burden of proof when it argued in closing that an abiding belief that I.M.R. and S.D.R. suffered at the hands of their father was a finding beyond a reasonable doubt. We disagree.

A prosecutor's argument misstating, minimizing, or trivializing the law regarding the burden of proof can be improper. *State v. Johnson*, 158 Wn. App. 677, 684-86, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011). Due process requires that the State bear the burden of proving each element of a crime beyond a reasonable doubt. *Warren*, 165 Wn.2d at 26.

In *State v. Osman*, 192 Wn. App. 355, 366 P.3d 956 (2016), Division One of this court addressed whether defense counsel's definition of the term "abiding belief" misstated the State's

burden of proof. 192 Wn. App. at 375. Division One took note of the Supreme Court of the United States' determination that "'[t]he word "abiding" here has the signification of settled and fixed, a conviction which may follow a careful examination and comparison of the whole evidence.'" 192 Wn. App. at 374 (quoting *Victor v. Nebraska*, 511 U.S. 1, 15, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994)). As a result, the term "abiding belief" encouraged jurors "'to reach a subjective state of near certitude of the guilt of the accused.'" 192 Wn. App. at 375 (quoting *Victor*, 511 U.S. at 14-15). Accordingly, Division One held that defense counsel did not improperly quantify the State's burden of proof by arguing that an abiding belief of guilt meant the jurors would not look back on their decision after leaving the courthouse and wonder if they made a mistake. 192 Wn. App. at 375.

Here, the prosecutor argued in closing that "[i]f . . . you have an abiding belief in the truth of the charge, then you are satisfied beyond a reasonable doubt. . . . [I]f you walk out of here and you say, 'I believe those kids,' that's an abiding belief. That's beyond a reasonable doubt." VRP (July 13, 2015) at 776. On rebuttal, the State continued,

> [I]f you believe that these children suffered these acts at the hands of their father . . .
> if you have an abiding belief, if you walk out of this room and say yes, in fact, I think
> these children did suffer these acts by their father, you have enough evidence beyond
> a reasonable doubt.

VRP (July 13, 2015) at 817. Ragland did not object.

Ragland argues that the prosecutor's statement improperly mischaracterized the State's burden of proof because it suggested that believing "the children suffered these acts at the hands of their father" satisfied belief beyond a reasonable doubt. Br. of Appellant at 23. Ragland also argues that the State's argument implied that an abiding belief lasts only until the jurors return a verdict and leave the courtroom. But looking at the argument as a whole, the prosecutor did not

argue that an abiding belief was a fleeting or short-lived belief. Instead, the prosecutor argued that the jury must have an abiding belief that I.M.R. and S.D.R. suffered the acts charged to convict Ragland. Therefore, the prosecutor did not mischaracterize the State's burden of proof.

Moreover, even assuming the prosecutor's argument misstated the State's burden, we note that Ragland did not object. Because an instruction could have cured any resulting prejudice, Ragland has waived any error.

D.      *Disparaging Defense Counsel*

Ragland also argues the prosecutor committed misconduct by disparaging the role of defense counsel during rebuttal argument when she argued, "'Look over here and look over here . . . . Don't look at what the kids actually said.'" Br. of Appellant at 26 (quoting VRP (July 13, 2015) at 817). We disagree.

It is improper for a prosecutor to disparagingly comment on defense counsel's role or challenge defense counsel's integrity. *Warren*, 165 Wn.2d at 29-30. A prosecutor arguing in a manner that disparages defense counsel affects a defendant's right to trial by an impartial jury. *State v. Reed*, 102 Wn.2d 140, 145-46, 684 P.2d 699 (1984). Disparaging defense counsel, however, is significantly different from disparaging defense counsel's argument. *See Warren*, 165 Wn.2d at 30. Counsel is provided significant latitude in closing arguments, and disparaging opposing counsel's argument is not a prohibited attack. 165 Wn.2d at 30.

On rebuttal, the prosecutor stated, "[Defense] [c]ounsel asks you to think about plausibility." VRP July 13, 2015 at 817. The prosecutor continued:

> [Defense counsel] asks you to look at the plausibility of other scenarios. Look over here and look over here and look over here. Don't look at actually what the kids said. Don't think about the fact that [I.M.R.] told you about [the abuse] . . . and provided everybody, particularly you, with more detail about that when defense counsel asked her.

VRP (July 13, 2015) at 817. Ragland did not object.

Ragland argues that the prosecutor's comments are similar to the prosecutor's argument in *Thorgerson*. 172 Wn.2d at 438. In *Thorgerson*, the prosecutor described the defense as "bogus" and argued that "'[t]he entire defense is sl[e]ight of hand. Look over here, but don't pay attention to there. . . . Don't pay attention to the evidence. . . . Look at everything except what matters.'" 172 Wn.2d at 451 (alteration in original). The Washington Supreme Court held that the prosecutor committed misconduct and impugned defense counsel's integrity by arguing that defense counsel's argument was "bogus" and "sleight of hand." 172 Wn.2d at 451-52. The court did not discuss whether the "[l]ook over here, but don't pay attention to there" statement was improper. *See* 172 Wn.2d 452.

While the prosecutor here similarly argued "[l]ook over here and look over here," the two arguments were vastly different. In *Thorgerson*, the prosecutor directly attacked defense counsel in stating that "the entire defense" was bogus and a sleight of hand. 172 Wn.2d at 450-51. Conversely, the prosecutor here criticized defense counsel's argument. Further, the prosecutor's statement does not refer to defense counsel's integrity or his role at trial. Accordingly, the prosecutor did not commit misconduct.

20

E.      *Cumulative Error*

Lastly, Ragland argues that the cumulative effect of the prosecutor's misconduct deprived him of a fair trial. We disagree.

The cumulative error doctrine applies when a trial is affected by several errors that, standing alone, may not be sufficient to justify reversal. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Cumulative error requires reversal when the combination of errors denies the defendant a fair trial. 141 Wn.2d at 929. Reversal is not required when there are few or no errors and the errors, if any, have little to no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Ragland argues that repeated instances of prosecutorial misconduct constitute cumulative error and require reversal. As discussed above, Ragland fails to show that the prosecutor's allegedly improper questions and statements constitute misconduct. The prosecutor's question asking Ragland whether I.M.R. and S.D.R. were lying and description of the unanimity instruction were improper, but these errors were not prejudicial. As a result, the alleged errors had little to no effect on the outcome of Ragland's trial. Accordingly, we hold that Ragland's cumulative error claim fails and does not warrant reversal.

CONCLUSION

We affirm Ragland's first degree child molestation charges. But we reverse Ragland's first degree rape of a child, first degree incest, and second degree incest convictions and remand for a new trial on those charges.

21

No. 47963-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.